Boyd, Appellant, *v.* Hertz Corporation et al., Appellants.

Argued June 18, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*James F. Mundy*, with him *B. Nathaniel Richter*, and *Richter, Syken, Ross & Binder*, for appellant.

*Raymond M. Seidel*, with him *High, Swartz, Roberts & Seidel*, for appellants.

*C. Howard Harry, Jr.*, for appellee.

OPINION BY SPAULDING, J., September 21, 1971:

These are appeals from orders dismissing motions for a new trial generally and for a new trial limited to the issue of damages entered on May 14, 1970, by a court en banc of the Court of Common Pleas of Montgomery County. These orders followed a jury verdict in the sum of $5000 in favor of appellant Robert E. Boyd, in favor of appellee Daniel E. Karpiak, and against appellant-appellees The Hertz Corporation, William F. Hardy, and Universal Rundle Corporation.

This case arose from an automobile accident which occurred in April 1964. Appellant Boyd was driving his station wagon in heavy traffic on the Schuylkill Expressway heading into Philadelphia. He was in the left or passing lane of the two eastbound lanes when he slowed to a halt behind a line of traffic. As Boyd slowed down, appellee Karpiak's car, which was the second car in front of Boyd, skidded across the wet, slippery roadway and turned more than 90 degrees clockwise into the right lane. Karpiak's car came to rest with its front wheel on the shoulder of the road and the remainder of the car blocking the right-hand lane, at a right angle to the flow of traffic. At this point, Karpiak looked towards the approaching traffic and observed a tractor-trailer—approximately 500 feet away—bearing down on him. Believing that the vehicle was still far enough away so that a collision could be avoided, Karpiak backed his car into the passing lane until its back bumper touched the metal guard

rail, put the car into forward gear, and attempted to pull into the right-hand lane and proceed. Unfortunately, the motor stalled leaving his car in approximately the same position, perpendicular to the flow of traffic, blocking the passing lane completely with his right front wheel still protruding two feet into the right-hand lane.

Appellant-appellee Hardy was driving the Universal Rundle tractor-trailer in the right-hand lane. Seeing Karpiak's car protruding two feet into his lane, Hardy continued to move, attempting to maneuver his truck around the car to the right. Fearing to drive onto the wet, unpaved, and presumably soft shoulder, Hardy attempted to squeeze past the Karpiak car while remaining in the right-hand operating lane. When Hardy swung his tractor to the right, the trailer did not follow. It skidded slightly sideways, its rear end hitting the rear and right side of Boyd's station wagon and continuing on to slice the front right fender of Karpiak's car.

Appellant Boyd originally brought suit against all of the named defendants. The jury awarded a $5000 verdict against Hertz, Hardy, and Universal Rundle and found appellee Karpiak free from liability. Hertz, Hardy, and Universal Rundle, appellants, in No. 1255, appeal denial of their motion for a new trial generally. Boyd, appellant in No. 1189, appeals denial of his motion for a new trial limited to the issue of damages.

## No. 1255

Appellants in No. 1255, The Hertz Corporation, William F. Hardy, and Universal Rundle Corporation advance the arguments that, (1) the jury's verdict in appellee Karpiak's favor was so contrary to the evidence as to require that their motion for a new trial be granted, and (2) appellee was negligent as a matter of law.

We disagree. As to both points, the law in Pennsylvania is well settled that "where a new trial is refused or granted, an Appellate Court will reverse only when there has been a clear abuse of discretion or an error of law which controlled the outcome of the case." *Cwiakala v. Paal*, 427 Pa. 322, 324, 235 A. 2d 145 (1967), *Zeman v. Canonsburg Boro.*, 423 Pa. 450, 223 A. 2d 728 (1966), *Clewell v. Pummer*, 388 Pa. 592, 131 A. 2d 375 (1957).

Regarding the verdict, it is clear that the trial judge comprehensively charged the jury as to all relevant questions of fact and law. The jury, having had an opportunity to see and hear the witnesses and to weigh their credibility, rendered a verdict which may be supported on any of three of the legal theories on which they were charged by the trial judge. Initially, the jury may have concluded that while appellant Hardy was negligent appellee Karpiak was not negligent. Or, the jury may have concluded that while the appellee would normally have been negligent jointly with Hardy, he acted reasonably under the jury's application of the "sudden emergency rule". Finally, they may have concluded that although both were negligent, appellee Karpiak's negligence was not the proximate cause of the accident in which Boyd was injured. The evidence supports a jury verdict on any of these theories.

To answer appellant's second contention that Karpiak was negligent as a matter of law it is sufficient to point to evidence supporting the "proximate cause" theory, enunciated above, under which the jury could reasonably determine that he was not in fact negligent. Hardy saw Karpiak's car from several hundred feet away and continued to proceed towards it instead of stopping. Either his decision to continue driving forward or the manner in which he did so could constitute negligence. The jury could then find, as a matter of

fact, that any original negligence of Karpiak became a noncausal factor of the accident between Hardy's truck and Boyd, with the responsibility for Boyd's injuries remaining solely with Hardy. The general principle, as formulated by the late Chief Justice STERN in *Kline v. Moyer and Albert*, 325 Pa. 357, 191 A. 43 (1937) and cited with approval in *Klena v. Rutkowski*, 432 Pa. 509, 248 A. 2d 9 (1968), is that: "Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause." 325 Pa. 357, at 364.

As noted above, the trial judge's charge comprehensively discussed each of the legal issues involved. After defining proximate cause for the jury, his instructions included the following: "[A]n automobile or a truck must be kept under control at all times so that the driver can always stop within the distance that he can clearly see ... (and) If it was (referring to Karpiak's conduct) the proximate cause of the collision of the tractor-trailer with Boyd's car, (he would be liable) unless even though he was negligent, if that wasn't the proximate cause of Mr. Hardy's vehicle coming into contact with Mr. Boyd's car he would not be liable." There was sufficient testimony on which the jury might reasonably have based a finding that Hardy viewed the situation from a sufficient distance so that his subsequent conduct superseded any negligence on the part of Karpiak and was the sole proximate cause of the accident with Boyd.[1] While the trial court's verbal for-

---

[1] See *Klena*, supra, and *Hoffman v. McKeesport*, 303 Pa. 548, 154 A. 925 (1931), for factual situations analogous to the instant case where superseding cause was held to have occurred and negligence at law on the part of the original tortfeasors did not lie.

mulation of the rules of proximate and superseding cause did not precisely paraphrase the above cited language, the charge was nonetheless fair and accurate. The proper application of this charge to the facts might well lead to the conclusion that Karpiak was not negligent.

## No. 1189

Robert E. Boyd, appellant in 1189, advances two arguments relating to the adequacy of the jury's award. Initially, he contends that the trial judge committed reversible error in refusing to allow testimony as to certain matters by appellant, his wife and son, and his orthopedic surgeon, on the issue of damages. He alleges this resulted in an inadequate verdict. Second, appellant argues that even if this evidence was properly excluded the verdict was nevertheless inadequate. We find no merit in either of these contentions.

Evidence introduced at trial reveals that immediately after the accident appellant Boyd told two witnesses that he had not been injured. However, sixteen days later he consulted a physician complaining of pain in the neck and back. In all, subsequent to the accident, he consulted two general practitioners of osteopathy, an orthopedic surgeon, an x-ray specialist, and a chiropractic doctor. Preceding the accident, Boyd suffered from a painful low back condition dating from an accident in 1946 and was also suffering from osteoarthritis, other lumbar spine problems, and discogenic disease of the cervical and lumbar-sacral spine. He had been treated fairly regularly for these conditions. Appellant contends that at the time of the accident he was thrown forward in his car striking his chin and chest on the steering wheel. In general, his doctors agree that this caused at least some aggravation of his preexisting back condition. Three of these physicians tes-

tified in court, describing in detail the injury, treatment and costs, as well as what treatment would be required in the future.

Boyd alleged a total of $1563.60 in medical expenses and liquidated damages.[2] By his own testimony he had no loss of wages. Appellant's major contention as to damages apparently is based upon the testimony of his orthopedic surgeon who stated that two years prior to the trial he had recommended that Boyd have two operations, at a cost of $4000, but that up to the time of trial appellant had refused to undergo surgery. The doctor expressed the opinion that if Boyd's pain became severe enough, which he estimated had a 50% chance of occurring, appellant would submit to these operations. With these facts before them, the jury rendered a verdict for Boyd in the sum of $5000.

Initially, we dismiss any error of the trial judge in refusing to admit testimony as harmless. As stated in *D'Allura v. Perri*, 138 Pa. Superior Ct. 261, 264, 10 A. 2d 124 (1939) : "We are not convinced that any of the matters of evidence . . . were so obviously relevant that the rejection thereof was such an abuse of judicial discretion as to amount to a reversible error . . . decision on such points will not be interfered with on appeal save for manifest abuse of power."

Appellant Boyd complains that he was not permitted to testify at trial that he was willing to undergo surgery. But, this testimony was irrelevant, the jury already having heard a doctor's expert testimony that he recommended these operations and that without them appellant would suffer permanent pain. As cited by the court below, *Smith v. Smith*, 364 Pa. 1, 9, 70 A. 2d 630 (1950), states: "[S]tatements tending to show

---

[2] This included $920.10 medical expenses and $643.50 for services which Boyd contended he could not perform for himself due to the accident (lawn maintenance). He also claimed $700 for car repairs.

intent are admissible in evidence although self-serving (citation omitted), but such . . . are of *little probative value* without corroboration . . . ." (Emphasis added.) The trial court apparently concluded that Boyd's proffered testimony not only lacked corroboration, but was contradicted by appellant's own witnesses and actions up to the time of trial, thus being of little probative value. His expert's testimony allowed for the fixing of damages whether appellant did or did not undergo surgery in the future. Even were we to disagree with the learned trial judge's ruling, in these factual circumstances it was not an abuse of discretion constituting reversible error.

Likewise, the trial court properly exercised its discretion in limiting testimony by appellant's wife and son. Their testimony was permitted as to appellant's physical condition and activities, but excluded as to their "opinions" concerning his medical condition. The trial judge noted that "[T]estimony sought to be elicited by plaintiff (Boyd) forced the Court to balance on the fine edge between opinion and description". The general rule that a lay witness may testify to apparent physical condition of a person, but is barred as to matters relating to disease which are discoverable only through the training and experience of a medical expert, *Travellers v. Heppenstall Co.*, 360 Pa. 433, 61 A. 2d 809 (1948); *Glickman v. Prudential Ins. Co. of America,* 151 Pa. Superior Ct. 52, 29 A. 2d 224 (1942), was applied by the trial judge to all testimony which required this balancing. Any error made was not an abuse of discretion in view of the testimony of the appellant himself and his doctors, describing his conditions before and after the accident, which had already been admitted.[3]

---

[3] This is especially true here. Boyd's condition before the accident was admittedly serious and could only be accurately described by a doctor.

The striking of a portion of the testimony of appellant's principal medical witness was also proper. The trial court did no more than limit repetitious testimony, which in these circumstances was within its discretion. *D'Allura*, supra, at 263.[4]

In Pennsylvania, the granting of a new trial based on the alleged inadequacy of the verdict is within the discretion of the trial court and this Court will not interfere unless the verdict is so unreasonable as to show: a clear abuse of discretion, a verdict influenced by partiality, prejudice, or misconception of law or evidence, or that a clear case of wrong and injustice resulted. *Elza v. Chovan*, 396 Pa. 112, 152 A. 2d 238 (1959), *Takac v. Bamford*, 370 Pa. 389, 88 A. 2d 86 (1952). See *Wilson v. Nelson*, 437 Pa. 254, 258 A. 2d 657 (1969). It is for the jury to weigh the credibility and accuracy of the witnesses and any estimates made as part of their testimony. If the verdict bears a "reasonable resemblance to the proven damages", this Court will not

---

Appellant's reliance on *Duffy v. Griffith*, 134 Pa. Superior Ct. 447, 4 A. 2d 170 (1939), in arguing that exclusion of testimony was reversible error, is unpersuasive. In *Duffy*, this Court held that it was error to exclude disinterested witness' testimony as to the appellant's condition preceding an accident, when all but one of the witnesses up to that point in the trial had some interest in the case. Here, the testimony sought to be elicited from Boyd's wife and son was no more than corroboration of his condition prior to and after the accident which had already been covered by the *disinterested* doctors and appellant himself. Therefore, even if these interested witnesses were competent to give such testimony, i.e.— it did not require a medical expert due to Boyd's condition, its exclusion was not reversible error.

[4] The testimony stricken was the response to the question ". . . in your opinion will he (plaintiff) need more or less or the same amount of treatment in the future?". This witness had already been allowed to answer at some length the question, "Do you have an opinion as to how his condition will progress in the future?". The trial court stated that it felt the answer had covered the same area as the stricken testimony. We agree.

interfere with the jury's verdict. *Elza, supra,* at 115, *Paustenbaugh v. Ward Baking Co.,* 374 Pa. 418, 97 A. 2d 816 (1953). It does so here.

Compromise verdicts are both expected and allowed. *Elza, supra,* at 115, *Karcesky v. Laria,* 382 Pa. 227, 114 A. 2d 150 (1955). "The compromise may arise out of damages or negligence or the balance of evidence concerning *either* or both, and the grant of a new trial may be an injustice to the defendant rather than an act of justice to the plaintiff." (Emphasis added.) *Elza, supra,* at 115; see *Patterson v. Palley Mfg. Co.,* 360 Pa. 259, 61 A. 2d 861 (1948). Here, the jury's verdict was a compromise as to damages. The jury had to weigh the credibility of the expert testimony. Boyd's physicians themselves had difficulty in estimating to what extent this particular accident aggravated an already serious and painful back condition.[5] Further, the jury had to assess Boyd's own testimony in light of, (1) his persistent refusal up to the time of trial to have the recommended surgery, (2) his continuing participation in many of his previous physical activities, and (3) his admissions immediately after the accident. In such circumstances, the jury's decision as to damages was certainly a reasonable compromise.

This Court will not reverse a finding that a new trial is not warranted, on the grounds of inadequacy, where the verdict, as in the instant case, was reached by the jury after an impartial charge and where there was a factual question as to what injuries were attributable to the accident and what injuries were pre-existing. *Pasqualucci v. Kronz,* 195 Pa. Superior Ct. 462, 171 A. 2d 873 (1961). As stated by the learned trial judge: "The verdict was not large but does not shock

---

[5] Thus, the jury decided which medical bills were attributable to this accident, rather than Boyd's prior back ailments which required treatment, as a question of fact.

the conscience of the Court. The plaintiff's condition at the time of trial and the effect of the accident in relation to that condition, bearing in mind the pre-existing condition, were facts for the jury. We find no reason to disturb their findings."

The verdict and judgment of the court below is affirmed.