Reese *v.* Hughes, Appellant.

Argued April 13, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Robert C. Reed,* with him *Wallover, Barrickman, Reed & Steff,* for appellants.

*Oran W. Panner,* with him *Panner, Holland and Autenreith,* for appellee.

OPINION BY SPAULDING, J., January 4, 1973:

## I.

This action in trespass is based on a collision, August 28, 1965, between a motorcycle operated by additional defendant John A. Roethlisberger, on which appellee William J. Reese was a passenger, and an automobile operated by appellant Darlene Mahoney Hughes, the original defendant below. Appellee commenced suit in the Court of Common Pleas of Beaver County, by summons, on July 25, 1967, and filed his complaint on December 16, 1968. On February 10, 1969, appellant joined the additional defendant. Following a four-day trial, a jury returned a verdict finding for appellant and further finding that the additional defendant alone was negligent in causing appellee's injuries. The trial court molded the verdict in favor of both appellant and the additional defendant since the latter had not been joined until after the statute of limitations had run on appellee's cause of action. A court en banc granted appellee's motion for a new trial, from which order appellant appeals.

The facts leading up to the accident, as established by appellant's testimony at trial are as follows: Appellant is a nurse. She stopped her automobile in the northbound lane of a two lane, 20 foot wide highway, preparing to make a left-hand turn (as indicated by her turn signal) across the southbound lane into the driveway of a patient. Another car stopped behind her. As appellant looked ahead she could see 290 feet

of the roadway to the top of a hill in the road. She waited in this position until an approaching car passed and then not seeing or hearing anything else approaching (R. 268a) turned into the driveway. As she made the turn, she slowed down because of a hump where the paving and the shoulder of the road met. (R. 268a-269a). When her car was partially off the highway, appellant heard the motorcycle operated by the additional defendant, on which appellee was a passenger. Quickly looking up the hill in the direction of the noise, she observed the motorcycle descending the hill towards her. (R. 269a). She attempted to accelerate to get off of the highway completely, but before she could do so the motorcycle sped down the hill, striking the rear of her car. The accident resulted in the appellee being thrown from the motorcycle, causing his injuries.

The version of the facts presented by appellee's testimony differs in several crucial respects, as follows: The motorcycle was descending the hill traveling at 25 m.p.h., and was only 20 to 30 feet from appellant, when she suddenly made the left-hand turn, stopping in the cycle's path and causing the accident. (R. 139a-140a). Contrary to appellant's testimony that she had already entered the driveway (R. 270a), the appellee testified that at impact the front of her car remained on the shoulder of the roadway.[1] (R. 168a-169a). Appellee also introduced expert testimony showing that from where appellant was stopped prior to turning, while

---

[1] Appellee's version of the accident was generally corroborated by the additional defendant and another eyewitness. However, it must be noted that the additional defendant operated the motorcycle on which appellee was a passenger and was appellee's close friend. Likewise, the eyewitness was employed with appellee's father. In such circumstances, the jury could properly find appellant's testimony to be more credible than that of appellee, even though the latter was corroborated.

the motorcycle would only have been visible for 290 feet (to the top of the hill), the head of its operator would be visible for approximately 200 additional feet. (R. 117a-122a). Appellee argued, in the alternative, that even if his testimony that appellant suddenly turned in front of the cycle was not found credible, she still should have seen the motorcycle before turning into its path. Thus, he alleges that she was negligent in not using reasonable care in looking ahead.[2]

The jury determined that appellant was more credible and rendered a verdict in her favor, which, as noted above, was molded to also be in favor of the additional defendant. The court en banc, however, granted appellee's motion for a new trial. Their opinion concludes that: "There can be no doubt that the defendant's failure to continue to look [while making her turn into the driveway] . . . constituted negligence." They also noted that: "The verdict may have been the result of three factors, namely, prejudice against motorcycles, the fact that defendant was a nurse on an errand of mercy and

---

[2] Appellee also argues that using the approximations of time, speed, and distance given by appellant the accident could only have occurred if the motorcycle was traveling at a speed of about 312 m.p.h., and therefore appellant's testimony cannot be given any weight. But, to the contrary, the mathematics can support appellant's testimony. Appellee's calculations assume that appellant began accelerating at the exact instant she saw the motorcycle speeding toward her. If, as is more probably the case, it took appellant 2 or 3 seconds to react before proceeding, then the calculations would allow that the motorcycle would have had to be traveling 60 m.p.h. or less (88 feet per second) to come the 290 feet and strike appellant's auto before she could accelerate out of the way. Findings on these "matters were peculiarly within the province of the jury as they depended not on incontrovertible physical facts but on the existence of varying and estimated distances and speeds, which distances and speeds in turn depended on oral testimony as supplemented by the evidence of the force and manner of collision". *Fowler v. Smith*, 217 Pa. Superior Ct. 244, 249, 269 A. 2d 340 (1970).

was the mother of two children, expecting a third. These circumstances may explain the verdict but they do not justify it."

The conclusion by the court below that the appellant was negligent as a matter of law is incorrect. Appellant did take sufficient precautions in operating her auto to support the jury's finding, if that finding was based on their determination that she was not negligent. The standard of care required of her is set out in *Leasure v. Heller*, 436 Pa. 108, 113, 258 A. 2d 855 (1969), which states that: "A driver of a vehicle on a public highway turning from a direct line 'shall first see' that such movement can be made in safety. The Vehicle Code, Act of April 29, 1959, P. L. 58, §1012, 75 P.S. §1012. One who fails to look can hardly be said to comply with this statutory mandate. Also, a driver of a vehicle who turns left across another lane of traffic without looking to see if another vehicle is occupying, or is about to occupy, his intended line of travel is guilty of negligence. Silfies v. American Stores Company, 357 Pa. 176, 53 A. 2d 610 (1947), and Jamison v. Kamerer, 313 Pa. 1, 169 A. 231 (1933). And even if the motorist has the right of way, in such a situation *he must continue to look* for oncoming traffic. Silfies v. American Stores Company, supra, and Webb v. Hess, 335 Pa. 401, 6 A. 2d 829 (1939)." Applying this standard to the facts before them, the *Leasure* Court held that a driver who admittedly last looked for oncoming traffic when he was 50 feet away from the intersection at which he blindly made a left turn was guilty of negligence as a matter of law. The instant case is inapposite. Appellant stopped and waited at the point at which she was to make her turn, continuing to look down the roadway, and not turning until the road was clear for as far as she was able to observe. Even when challenged on cross-examination, appellant stated: "No, I stopped and I looked and I

continued to sit there and look down the road." (R. 298a). The jury could conclude from appellant's testimony that she acted reasonably and prudently.

In *Fowler v. Smith*, 217 Pa. Superior Ct. 244, 247-248, 269 A. 2d 340 (1970), we held that once a driver has stopped, looked, and then started to turn, "It is his duty to continue to look in the direction of his turn".[3] Appellant's actions properly met this duty. She "is not like Janus of Roman mythology, equipped with two pairs of eyes, permitting [her] to look in opposite directions simultaneously. [She] is required by law only to due care and prudence under the circumstances."[4] The jury found that appellant met these standards of care. She heard and saw the motorcycle, though only taking an admittedly "quick look". She then returned her attention to the direction in which she was required to proceed in order to try and avoid being hit by the cycle. Viewing these facts in the light most favorable to appellant, in whose favor a verdict was returned, they support a finding that she was not negligent.

## II.

The court en banc also failed to consider another basis which would both explain and support the jury's finding for appellant. The jury could have properly determined, as charged, that the additional defendant's negligence in operating the motorcycle, alone, was the proximate cause of the accident. The general principle, as formulated by the late Chief Justice STERN in *Kline v. Moyer and Albert*, 325 Pa. 357, 191 A. 43 (1937) and cited with approval in *Klena v. Rutkowski*, 432 Pa. 509, 248 A. 2d 9 (1968), is that: "Where a sec-

---

[3] See *Rankin v. Boyle*, 328 Pa. 284, 195 A. 36 (1937); *Hoffman v. George*, 155 Pa. Superior Ct. 501, 38 A. 2d 504 (1944). But see *Billow v. Farmers Trust Co.*, 438 Pa. 514, 266 A. 2d 92 (1970).

[4] *Flowers v. Green*, 420 Pa. 481, 483, 218 A. 2d 219 (1966).

ond actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause." 325 Pa. 357, at 364. The trial judge did charge the jury on proximate cause: "Therefore, if you would find that the Original Defendant [appellant] was not negligent, or that her negligence was not the proximate cause of the injury, and that the Additional Defendant was alone negligent, then you would stop your deliberations right there and return a verdict stating that you find the Original Defendant not negligent and the Additional Defendant negligent . . . ." (R. 394a) This is precisely the finding made by the jury. It could very well have been based on proximate cause, rather than a determination that appellant was not negligent.

## III.

Regardless which of the two possible determinations discussed above was the basis of the jury's finding, that finding should not be disturbed. The court en banc's speculation as to the basis of the jury's verdict and their order granting a new trial are improper. In *Gilligan v. Shaw,* 441 Pa. 305, 307-308, 272 A. 2d 462 (1971), our Supreme Court reiterated the standard to be applied in "reviewing the exercise by a lower court of its discretion in granting . . . a new trial". The Court stated that: "There are no yardsticks which can be applied with mathematical certainty but, in a word, the general rule is that we will not interfere with the exercise of discretion . . . 'unless there has been a clear abuse of discretion or an error of law which necessarily controlled the grant of the new trial.' Kralik v. Cromwell, 435 Pa. 613, 615, 258 A. 2d 654

(1969).* In Austin v. Ridge, 435 Pa. 1, 255 A. 2d 123 (1969), we said: 'The burden of the approach outlined is to treat the legitimacy of the trial court's grant of a new trial as a function of the seriousness of the jury's departure from that result which the trial court feels is dictated by the evidence. Where the case is close and the evidence contradictory, the jury must perforce be given freer rein; . . . .' " The Court then held that, in the motor vehicle accident case before them, there was "ample evidence" which supported the jury's finding in favor of the defendants. The Court distinguished cases in which they had affirmed the granting of a new trial: "[T]he case differs materially from the evidential picture presented in Austin v. Ridge, supra, and Kralik v. Cromwell, supra, both rear-end collision cases. As in Burrell v. Phila. Electric Co., 438 Pa. 286, 289, 265 A. 2d 516 (1970), 'we are satisfied that a new trial was not imperative' and conclude that 'the lower court clearly abused its discretion in granting plaintiffs' new trial motion'." 441 Pa. at 309. We hold that the court en banc (and appellee) has erroneously relied on *Austin v. Ridge,* 435 Pa. 1, 225 A. 2d 123 (1969), which is distinguishable from the facts of the instant case, as noted by the Supreme Court in the reasoning above.

The order of the court below granting a new trial is reversed and the jury's verdict for defendants reinstated.