409 A.2d 860

Thomas A. GRAINY, a minor, by Thomas F. Grainy, and Dorothy A. Grainy, his parents and natural guardians, and Thomas F. Grainy and Dorothy A. Grainy in their own right

v.

Bruce A. CAMPBELL, an Individual, Turner Dairy Farms, Inc., a corporation, Charles G. Turner, an Individual, Lydia C. Turner, an Individual, M. O'Herron Co., a corporation, Equitable Gas Company, a corporation, and Peoples Natural Gas Company, a corporation (two cases).

Appeal of M. O'HERRON COMPANY.

Appeal of PEOPLES NATURAL GAS COMPANY at No. 748.

Appeal of Bruce A. CAMPBELL, an Individual, and Turner Dairy Farms, Inc. at No. 754.

Superior Court of Pennsylvania.

Argued Oct. 23, 1978.

Filed Sept. 6, 1979.

Petition for Allowance of Appeal Granted Feb. 13, 1980.

226

Robert E. Wayman, Pittsburgh, for appellant at No. 714.

John R. Kenrick, Pittsburgh, for appellant at No. 748 and appellee at Nos. 714 and 754.

James E. Coyne, Pittsburgh, for appellants at No. 754 and appellees at Nos. 714 and 748.

Harry Zimmer, Pittsburgh, for Thomas A. Grainy, et al., appellees at Nos. 714, 748 and 754.

Before CERCONE, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

On the morning of Saturday, September 25, 1971, Thomas A. Grainy, a minor, and five other Boy Scouts were hiking easterly along the northern berm of Saltsburg Road, a two-lane thoroughfare in Plum Township, Allegheny County. As they walked along the berm the boys came upon an open ditch estimated to be three feet square and four feet deep. This excavation had been made by M. O'Herron Co., which had contracted with Peoples Natural Gas Company to replace a pipeline, and when work stopped on Friday afternoon, the excavation had been left uncovered but barricaded

with metal horses and piles of dirt. When the boys were confronted by this open excavation, four of them passed it by entering upon and walking across privately owned lawns adjacent to the excavation. Plaintiff and another boy hesitated, intending to enter the roadway and pass around the excavation on the paved surface thereof.

At this moment, Bruce Campbell approached from the east, driving a dump truck owned by Turner Dairy Farms, Inc. and pulling a ten feet long trailer. Campbell testified, and his testimony was uncontradicted, that he observed the open excavation and the hiking Boy Scouts when 300 feet distant. Because he realized the peril of the two boys in the roadway and observed the absence of oncoming traffic, he moved his truck partially to the left side of the highway. The minor plaintiff and his companion thereupon started to pass the excavation on the paved portion of the highway. As Campbell's truck passed the boys, he suddenly swerved again to the right. This caused the first boy to leap upon a dirt pile to avoid being struck. The minor plaintiff, however, was struck by the swerving trailer and knocked into the open excavation. He sustained various injuries for which he sought recovery.

A jury returned a verdict in favor of plaintiff and his parents for $68,000 and against all defendants. Motions for new trial and judgment n. o. v. were denied by the court below, and defendants appealed.

■ Appellants, M. O'Herron Co. and Peoples Natural Gas Company, had presented motions for binding instructions to the trial court. Their subsequent motions for judgment n. o. v., therefore, comprehended any defense apparent on the record. *Koerth v. Turtle Creek Boro*, 355 Pa. 121, 127, 49 A.2d 398, 401 (1946); *Liquid Carbonic Company v. Truby*, 40 Pa.Super. 634, 637–638 (1909). They argued in the court below and in this Court on appeal: (1) that as a matter of law they were free of negligence; (2) that the minor plaintiff was contributorily negligent as a matter of law; and (3) that the excavation was not a proximate cause of the minor

plaintiff's injuries.[1]  The remaining appellants, Bruce A. Campbell and Turner Dairy Farms, Inc., argue only that the minor plaintiff was guilty of contributory negligence as a matter of law.

The contentions of all defendants that the minor plaintiff was contributorily negligent as a matter of law and the contentions of O'Herron and Peoples that they were free of negligence cannot be sustained.  A judgment n. o. v. is proper only in a clear case, where a defendant's lack of negligence or a plaintiff's contributory negligence is so clear that reasonable minds cannot differ.  *Lavely v. Wolota*, 253 Pa.Super. 196, 384 A.2d 1298 (1978);  *Hilscher v. Ickinger*, 194 Pa.Super. 237, 166 A.2d 678 *affd.*, 403 Pa. 596, 170 A.2d 595 (1961).  Where, as here, an obstruction to a sidewalk or pedestrian walkway forces a pedestrian into the roadway, a jury may find negligence on the part of those responsible if they have unreasonably failed to provide the means for safe passage.  See: *Bacsick v. Barnes*, 234 Pa.Super. 616, 341 A.2d 157 (1975).  So also, a pedestrian is not guilty of contributory negligence as a matter of law because he or she stepped into the roadway to avoid the obstruction.  *Eller v. Work*, 233 Pa.Super. 186, 336 A.2d 645 (1975); *Bacsick v. Barnes*, supra.  In the instant case, moreover, the testimony disclosed that the minor plaintiff had not stepped into the roadway until after Campbell had steered his truck to the opposite side of the road to allow plaintiff to pass in safety.  It was only after he had committed himself to the roadway at Campbell's apparent invitation that he was injured by a change in the direction followed by Campbell's truck.

1.  M. O'Herron Co. and Peoples Natural Gas Company also contend that the trial court erred in failing to instruct the jury that Pennsylvania Highway Department regulations which were incorporated into appellants' Highway Occupancy Permit did not constitute standards of care applicable to a determination of neglience.  This issue, however, has not been preserved for appellate review.  Appellants did not object to the admission of such regulations into evidence or to the reading of the same to the jury and did not except to the court's charge thereon.  *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).  See also: *Kolb v. Hess*, 227 Pa.Super. 603, 323 A.2d 217 (1974).

The issue of proximate cause is more difficult. In *Kline v. Moyer and Albert*, 325 Pa. 357, 191 A. 43 (1937), the Supreme Court, relying in part upon the Restatement of Torts § 447, held that where a second actor has become aware of the existence of a potential danger created by the antecedent negligence of an original tortfeasor and thereafter, by an independent act of negligence, brings about an accident, the first tortfeasor is relieved of liability because the antecedent condition which he created was merely a circumstance of the accident.

Recent decisions have made it clear that the broad, general rule of law as it pertains to superseding cause is in accord with the view adopted by the Restatement (Second) of Torts § 447. See: *Miller v. Checker Yellow Cab Company of Bethlehem*, 465 Pa. 82, 348 A.2d 128 (1975); *Flickinger Estate v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973); *Pushnik v. Winky's Drive-In Restaurants, Inc.*, 242 Pa.Super. 323, 363 A.2d 1291 (1976). This principle, unchanged in substance from the original Restatement view, is as follows:

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>
> (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
>
> (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
>
> (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

Appellee argues and the dissent concludes that the principle of *Kline v. Moyer and Albert*, supra, and the Restatement view are incompatible and that the former rule, therefore, has by implication been overruled by those decisions which have adopted Section 447 as a part of the law of Pennsylvania. With this we disagree.

*Kline v. Moyer and Albert,* supra, was a policy decision which limited an actor's responsibility for antecedent negligence. The Court was there concerned with proximate causation, an issue of law, and not causation in fact, which is a factual issue. This is a distinction recognized by the Supreme Court in *Flickinger Estate v. Ritsky,* supra, and by textbook writers as well. See: W. Prosser, Law of Torts § 45, at 289 (4th ed., 1971). See also: Restatement (Second) of Torts, § 453. Because *Kline v. Moyer and Albert,* supra, is a policy decision it should not be overruled by implication. If it has outlived its usefulness and should now be relegated to the list of incorrectly decided precedents, it should be overruled expressly by the Supreme Court so that both bench and bar will know that reliance can no longer be placed thereon. Until that occurs, this Court is required to follow the policy articulated therein and followed uniformly thereafter by the courts of Pennsylvania.[2] See: *Lowery v. Pittsburgh Coal Co.,* 216 Pa.Super. 362, 268 A.2d 212 (1970) (neither common pleas court nor Superior Court is authorized to change established legal principles).

Section 447 of the Restatement of Torts and *Kline,* moreover, are not incompatible.[3] This was demonstrated by Justice Pomeroy in an opinion written in *Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970). He there wrote: "Section 447 of the Restatement (Second) provides that a subsequent negligent act . . . will not relieve the original actor of liability if . . . it is 'a normal consequence of a situation created by the actor's conduct, and the manner in which it is done is not extraordinarily negligent.' While the Pennsylvania cases have sometimes conditioned an intervening

2. See: *Churchill v. Eakin,* 233 Pa.Super. 466, 335 A.2d 378 (1975); *Reese v. Hughes,* 223 Pa.Super. 311, 299 A.2d 653 (1973); *Boyd v. Hertz,* 219 Pa.Super. 488, 281 A.2d 679 (1971).

3. When *Kline v. Moyer and Albert* was decided in 1937, the Court cited and relied upon Section 447 of the Restatement of Torts. Although this reference was to the first edition, the original Section 447 was incorporated almost verbatim into the Restatement of Torts 2d. The only change occurred in subsection (c), where the words "normal response to . . ." were replaced by "normal consequence of . . ."

actor's sole liability on his awareness of the danger to be avoided at a time when avoidance was still possible, *this is but another way of saying that negligence in the face of a known danger is extraordinary.* That is, it is one thing for an intervening actor to be unable to avoid a peril . . . because, through inattention, the danger was not observed in time; it is quite another to fail to exercise reasonable care and take proper action to avoid a collision after having become aware of the danger created by the original actor's negligence. In the first case, the intervenor's negligence may be called ordinary, and as to the first actor, a risk reasonably to have been foreseen; in the second case, negligence in the face of peril is properly denominated 'extraordinary' and as in § 447 excuses the original actor of liability for the harm brought about by the intervening negligence." (Emphasis added.)

The same compatibility is exhibited by Comment g to Section 447. It is there suggested as follows: "While the fact that . . . an intervening act of a third person is negligent does not prevent the actor's negligent conduct from being a legal cause of the harm resulting therefrom to another, the negligence of the act may be so great or the third person's conduct so reckless as to make it appear an extraordinary response to the situation created by the actor and therefore a superseding cause of the other's harm."

The decision in *Flickinger Estate v. Ritsky,* supra, did not purport to overrule *Kline.* There, plaintiff's decedent, while driving a motorcycle, was struck and killed by a motorist pulling onto the highway from a private parking lot. The motorist's view had been obstructed by a pile of dirt negligently left on the berm of the highway by a contractor in the course of laying a sanitary sewer line. The motorist, although he had been aware of the dirt pile, was not aware of decedent's approach on the highway. He did not consciously disregard a known danger to the decedent. The contractor responsible for the dirt pile defended on the grounds that he had created merely a "passive condition" upon which the motorist's negligence acted and that the

motorist's conduct, therefore, had been a superseding cause. The Supreme Court overruled the rule which declined to impose liability for a "passive condition" upon which the negligence of another acted to cause an accident.[4] It held, rather, that Section 447 of the Restatement was a correct statement of the law. The "passive condition" rule, however, is not the principle announced in *Kline*. Indeed, the *Kline* rule, having no applicability to the facts of *Flickinger* was neither discussed nor considered.[5]

In the instant case, the evidence discloses an unforeseeable, extraordinary and reckless response by one who was aware of an antecedent condition and who comprehended fully the risk thereby created for the minor plaintiff. It is undisputed that Campbell had observed the plaintiff and his companion and was aware of their predicament. In light of Campbell's awareness of the danger to the minor plaintiff, several observations will suggest the extraordinary and reckless nature of his acts. First, until he pulled his truck to the left, the boys did not venture into the roadway. They did so only after the truck had been diverted from its original course to make room for them. Secondly, if the direction of Campbell's truck had not again changed after the boys had committed themselves to the roadway, their passage would have been completed without incident. Thirdly, there was no necessity for pulling back into the right lane before Campbell's truck and trailer had safely passed the boys. Unfortunately, after the boys had committed themselves to the roadway and before Campbell's unit had passed them, he suddenly turned his truck again to the right and cut down the minor plaintiff. This turn was made

4. In *Cotter v. Bell*, 417 Pa. 560, 208 A.2d 216 (1965), the "passive condition" had been a large hedge which impeded vision at an intersection. In *Kite v. Jones*, 389 Pa. 339, 132 A.2d 683 (1957), the "passive condition" had been a high fence which obstructed visibility at an intersection.

5. The only reference to *Kline* appears in footnote 6, 452 Pa. p. 74, 305 A.2d p. 43 n. 6, where it is cited for the proposition that the Supreme Court had "cited and adopted the language of section 447 of the Restatement in various previous decisions."

with a full awareness of the open excavation and the presence of the minor plaintiff on the roadway. Campbell's conduct, under the circumstances, evidenced a conscious disregard of a known and appreciated danger and was wanton and reckless. Restatement (Second) of Torts, § 500; *Evans v. Philadelphia Transportation Company,* 418 Pa. 567, 212 A.2d 440 (1965). See also: *Fugagli v. Camasi,* 426 Pa. 1, 229 A.2d 735 (1967); 27 P.L.E., Negligence § 9.

Application of the rule in *Kline v. Moyer and Albert,* supra, clearly compels the conclusion that Campbell's disregard of a known and understood danger was a superseding cause of the accident. Consistently, Section 447 of the Restatement (Second) of Torts compels the same result. Campbell's intervening act, coming after he was aware of the uncovered but barricaded excavation and after he understood the risk to the boys who were hiking along the roadway, was so extraordinary, so reckless, and so unforeseeable as to constitute a superseding cause as a matter of law. Campbell's recklessness in the face of a known danger was the proximate and legal cause of the minor plaintiff's injuries, and not the antecedent negligence of the contractor. Therefore, it is Campbell and his employer who are responsible for the loss. See: *Klena v. Rutkowski,* 432 Pa. 509, 248 A.2d 9 (1968). Cf. *DeLuca v. Manchester Laundry and Dry Cleaning Co., Inc.,* 380 Pa. 484, 112 A.2d 372 (1955).

The judgment entered against Bruce A. Campbell and Turner Dairy Farms, Inc. is affirmed. The judgment against M. O'Herron Co. and Peoples Natural Gas Company is reversed, and the case is remanded for the entry of judgment n. o. v. in their favor.

HOFFMAN, J., files a concurring and dissenting opinion.

HOFFMAN, Judge, concurring and dissenting:

Initially I dissent because I would hold that appellants have waived their contentions.[1] If I were to reach the

---

1. I join that part of the majority opinion, *supra* at note 1, holding that appellants have waived their claim regarding requested instructions

merits, I would join the majority opinion on the issues on plaintiff's contributory negligence and the negligence of appellants O'Herron and Peoples.[2] However, I disagree with the majority opinion on the very difficult proximate cause issue.[3]

The relevant facts are as follows. On the morning of Saturday, September 25, 1971, plaintiff Thomas A. Grainy and five other Boy Scouts were marching easterly along the northern berm of Saltsburg Road in Plum Borough, Pennsylvania. The berm, which was unpaved, was about four feet wide in between the road and the private lawns of abutting home owners. Saltsburg Road is a two-lane highway running east and west. As the boys marched in single file, they approached an excavation ditch dug by defendant-appellant M. O'Herron Company (O'Herron) under contract with defendant-appellant Peoples Natural Gas Company (Peoples). The excavation was about three or four feet deep, and about four by four feet in area, covering the entire width of the berm, and completely obstructing pedestrian traffic thereon. The excavation was visibly marked with metal horses and piles of dirt on either side of the excavation.

A westbound truck driven by defendant Bruce A. Campbell approached the excavation. Campbell was approximately 300 feet away when he observed the Boy Scouts approaching the excavation. The first four Scouts passed

on the safety regulations of the Pennsylvania Highway Department. For the reasons which follow, I would also agree that appellant Peoples has preserved the contention that it was not negligent as a matter of law. *See* note 7 and accompanying text *infra*.

2. I would also note that appellants seek to characterize plaintiff's behavior as violative of the "choice of paths" doctrine because plaintiff walked in the road while a safe path on the private lawn was available to him. However, plaintiff's choice was reasonable because Campbell had already pulled his truck onto the opposing lane, and thus there was no apparent hazard on the road. *See Downing v. Shaffer,* 246 Pa.Super. 512, 518, 371 A.2d 953, 956 (1977).

3. Appellants also argue that their excavation was not the cause *in fact* of plaintiff's injuries. However, this contention is without merit as obviously plaintiff would not have walked in the road but for appellant's obstruction of the berm. *See Bacsick v. Barnes,* 234 Pa.Super. 616, 623, 341 A.2d 157, 161 (1975).

the excavation by walking onto the private lawns of the abutting homeowners. Campbell drove his truck into the center of the highway, partially encroaching on the eastbound lane (there was no oncoming traffic) in order to stay clear of the Scouts and the excavation. The fifth Scout in line, Bruce Grinder, noticed this and decided that since the truck driver had seen them, it would be safe to pass the excavation on the road surface. Plaintiff, bringing up the rear of the line, followed Grinder out onto the northern edge of Saltsburg Road, no more than a foot onto the road.

At this point Campbell's truck swerved back into the westbound lane towards the two boys. Grinder jumped onto the easterly dirt pile, but the truck hit plaintiff and knocked him into the excavation. As a result of this accident, plaintiff suffered various injuries for which he sought to recover damages in this lawsuit.

At the close of the evidence, O'Herron submitted one request for binding instructions, which read: "1. Under all the law and evidence your verdict must be in favor of the defendant, M. O'Herron Company." This was refused. Peoples requested a similar binding instruction: "1. Under the facts of this case and the applicable law, your verdict must be for the Peoples Natural Gas Company." This was also refused. Peoples also submitted other binding instructions that: (1) Peoples was not liable for any negligence of O'Herron, (2) in any event O'Herron was obligated to indemnify Peoples for Peoples' liability for the negligence of O'Herron, and (3) Peoples was not negligent as a matter of law.[4]

On March 25, 1977, the jury returned a verdict of $68,000 in favor of plaintiff against all defendants. On March 30, 1977, O'Herron filed a paper which read in full as follows:

"MOTION FOR JUDGMENT N.O.V.

"AND NOW to wit this 30th day of March, 1977, the defendant, M. O'Herron, by its attorneys, Wayman, Irvin

4. In a supplemental filing, Peoples also made three requested points for charge to the jury which were not requests for binding instructions.

and McAuley, having presented a Point for Binding Instructions, in its favor in writing, at the trial of the case and it having been refused, moves the Court to have all of the evidence taken upon the trial of the case duly certified and filed so as to become part of the record, and for judgment in favor of the defendant above named, Non Obstante Veredicto, upon the whole record, in accordance with the provisions of the Act of Assembly approved April 22, 1905, P.L. 286, and its Amendments".[5] Peoples the next day filed a substantially identical paper, i. e., denominated a motion for judgment n. o. v. but not stating any reasons or grounds in support of the motion.

Prior to *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974), cases cited by the Majority such as *Koerth* (1946) and *Liquid Carbonic* (1909) held that a motion for judgment n. o. v. comprehended any defense apparent in the record. Thus it has been stated that "[t]he failure to elaborate on reasons in support of the motion for judgment n. o. v. is not fatal if there is a refusal or reservation of a point for binding instructions upon which to base the motion." 6A Standard Pennsylvania Practice 206–07.

However, our Supreme Court has already stated quite explicitly that the waiver doctrine of *Dilliplaine* applies to n. o. v. motions. *Broxie v. Household Finance Co.,* 472 Pa. 373, 377–79, 372 A.2d 741, 743–44 (1977).[6] Generally, a naked motion for relief, which does not state any grounds in support thereof, is insufficient to preserve any issues for review. *See Commonwealth v. Austin,* 484 Pa. 56, 398 A.2d 941 (1979). It can no longer be disputed that an issue is waived if the moving party failed to raise the issue in a submitted request for binding instructions. *Frank v. Peckich,* 257 Pa.Super. 561, 577, 391 A.2d 624, 632 (1978); *Beh-*

---

**5.** *See* 12 P.S. § 681. This statute has since been repealed by the Act of April 28, 1978 P.L. 202, No. 53 § 2(a) [891], eff. June 27, 1980.

**6.** The boilerplate request for binding instructions used by Peoples and O'Herron here was rightfully condemned in *Broxie,* 472 Pa. at 375 n.1, 372 A.2d at 743 n.1, and *Frank v. Peckich,* 257 Pa.Super. 561, 577, 391 A.2d 624, 632 (1978).

*rend v. Bell Telephone Co.,* 242 Pa.Super. 47, 66, 363 A.2d 1152, 1162 (1976).

Here, appellants neither stated any grounds for the relief requested in their motion for judgment n. o. v. nor raised any of their present contentions in their requests for binding instructions.[7] Catch-all requests such as "under all the facts and the law, the verdict must be for us," obviously do not alert the trial judge to the specific reasons why judgment n. o. v. should be granted. *See Frank v. Peckich, supra* 257 Pa.Super. at 577, 391 A.2d at 632. As it stands, we have been presented with a very difficult question of proximate cause which was not presented to the court below. Thus, I would hold that appellants have not preserved their contentions for appellate review.

However, I will discuss the merits of the proximate cause issue because it is an important and difficult question, and I disagree with the result reached by the Majority. Appellants argue that because Campbell was aware of the obstruction and the approaching Scouts in sufficient time to avoid the danger and took steps to allow them safe passage, but then negligently allowed his truck to swerve back to the right and strike plaintiff, this negligent act was a superseding intervening cause of plaintiff's injuries breaking the chain of proximate cause from appellants' negligence to plaintiff's injuries. Appellants rely on *Klena v. Rutkowski,* 432 Pa. 509, 248 A.2d 9 (1968) and *Kline v. Moyer and Albert,* 325 Pa. 357, 191 A. 43 (1937). The *Kline* opinion stated the following rule in determining whether an intervening act of negligence would act as an efficient superseding cause excusing the first negligent actor from liability.

"Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its

7. The one exception is that Peoples requested a binding instruction that it was not negligent as a matter of law, which contention is also made on appeal here.

proximate cause. Where, however, the second actor does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties." *Kline, supra,* 325 Pa. at 364, 191 A. at 46. In *Klena v. Rutkowski,* 432 Pa. 509, 248 A.2d 9 (1968), on facts similar to the case at bar,[8] the Supreme Court cited the *Kline* rule in reversing the refusal to enter a judgment n. o. v. on behalf of the defendant. The *Kline* rule was also found to be the law of Pennsylvania in a federal diversity case, *Humphrey v. Lovejoy,* 250 F.2d 879 (3d Cir. 1957). We have recently upheld jury verdicts in favor of defendants by relying on the *Kline* rule. *See Reese v. Hughes,* 223 Pa.Super. 311, 299 A.2d 653 (1973); *Boyd v. Hertz,* 219 Pa.Super. 488, 281 A.2d 679 (1971). We have also recently denied a request for a new trial where plaintiff alleged an erroneous charge on the issue of superseding cause, stating that the *Kline* instruction given "complies with the law of Pennsylvania." *Churchill v. Eakin,* 233 Pa.Super. 466, 471, 335 A.2d 378, 382 (1975).

If the *Kline* rule was still the law in Pennsylvania on superseding cause, we would have to reverse and order a judgment n. o. v. for appellant Peoples and O'Herron. The evidence in the record shows that Campbell became aware of the risk created by appellants' negligence before the accident was inevitable. In fact, he took steps to avoid the risk, but negligently failed to do so. Under the *Kline* rule, this is

---

**8.** In *Klena,* the defendant truck company (Company) negligently failed to provide warning lights on a truck rented to plaintiff. The truck broke down on the highway as plaintiff was driving it. He got out to direct traffic around the truck. Defendant Rutkowski saw the truck stopped 100 yards away on the highway, and began to slow down. When plaintiff saw Rutkowski slow down, he turned to direct traffic coming in the opposite direction, and then Rutkowski hit him. Holding that the Company should have a judgment n. o. v., the Court said: "When Rutkowski was apprised of the danger, the accident was not inevitable. Rutkowski's negligence occurred *after* he was aware of the danger, and thus became a superseding cause." *Klena, supra* 432 Pa. at 514, 248 A.2d at 11.

240

a superseding cause. These facts are also very close to the facts decided in *Klena* (*see* note 8 *supra*).

However, in 1973 our Supreme Court in *Flickinger Estate v. Ritsky,* 452 Pa. 69, 74, 305 A.2d 40, 43 (1973) explicitly adopted the Restatement (2d) of Torts § 447 as the controlling rule of law in Pennsylvania on the issue of superseding intervening cause.[9] Section 447 states:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of the harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

The Restatement rule on superseding cause thus states a different principle than the *Kline* rule. Where the *Kline* rule focuses on the timing of the intervenor's awareness of the antecedent risk, the Restatement rule focuses on the foreseeability to the first negligent actor of the risk created by the intervenor. *See Klages v. General Ordnance Equipment Co.,* 240 Pa.Super. 356, 367 A.2d 304 (1976) (reasonably foreseeable risks are not superseding causes); *Pushnik v. Winky's Drive-In Restaurant,* 242 Pa.Super. 323, 363 A.2d 1291 (1976) (risk which was made obviously likely to occur because of two previous similar accidents cannot be superseding cause). In determining whether an intervening cause is reasonably foreseeable, it is not necessary that the particular manner in which the accident occurred is foresee-

9. Prior to 1973, the Restatement had been cited several times by our Courts. *See* the cases collected in *Flickinger, supra,* 452 Pa. at 74 n.6, 305 A.2d at 43 n.6. *See* especially *Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970), discussed at note 11 *infra*.

able, but rather whether the general type of risk created by the antecedent actor is foreseeable. *Noon v. Knavel,* 234 Pa.Super. 198, 212–13, 339 A.2d 545, 552–53 (1975).[10]

Applying Section 447 and the cases interpreting it to the facts at bar, we should find that Campbell's negligence was not a superseding cause relieving appellants of liability for their antecedent negligence. Appellants obstructed the berm of the road to pedestrians. This created a reasonably foreseeable risk that a pedestrian, after walking around the obstruction onto the road, would be hit by a negligently driven vehicle. This is no less foreseeable than other negligent acts which have been held *not* superseding causes. *See Miller v. Checker Yellow Cab Co.,* 465 Pa. 82, 348 A.2d 128 (1975) (motorist drove through obvious physical obstruction); *Flickinger Estate, supra* (motorist blindly drove onto highway from behind obstruction); *Noon v. Knavel, supra* (automobile repairman fails to make adequate temporary brake repair). Although under the *Kline* rule it would be significant that Campbell's negligence in swerving his vehicle back into the westbound lane occurred *after* his awareness of the risk created by appellants' antecedent negligence, under Section 447 liability continues because the general risk of the accident was reasonably foreseeable.[11] Restatement [2d] Torts, § 447(a).

I must conclude that the *Kline* rule is no longer the law in Pennsylvania on superseding cause since it conflicts with

**10.** Since *Flickinger,* Section 447 has also been applied as the controlling law in Pennsylvania on superseding cause in *Miller v. Checker Yellow Cab Co.,* 465 Pa. 82, 348 A.2d 128 (1975); *Hargrove v. Frommeyer & Co.,* 229 Pa.Super. 298, 323 A.2d 300 (1974); *Scheel v. Tremblay,* 226 Pa.Super. 45, 49–50, 312 A.2d 45, 47–48 (1973); *Whittle v. Schemm,* 402 F.Supp. 1294 (E.D.Pa.1975). *Whittle* quotes *Kline* rule in full, but only to support the proposition that any superseding cause under Pennsylvania law must be a *negligent* act. *Whittle, supra* at 1297.

**11.** I am aware that in *Whitner v. Lojeski,* 437 Pa. 448, 461–62, 263 A.2d 889, 896 (1970), a case decided before the explicit adoption of Section 447 by *Flickinger,* the Supreme Court sought to reconsile Section 447 and the *Kline* rule. There the Court reasoned that if an actor was negligent after his awareness of the risk created by the antecedent negligence, his negligence was "extraordinary" and there-

Section 447. I note that since the explicit adoption of Section 447 in 1973 in *Flickinger Estate,*[12] *supra,* the *Kline* rule has been followed only once, in *Churchill v. Eakin, supra,* and there without any extensive discussion. Otherwise since *Flickinger,* we have consistently applied Section 447. Because under the standards of the Restatement, Campbell's intervening negligence was not a superseding cause, appellants' negligence remained a proximate cause of plaintiff's injuries.

I would affirm the order below.

fore a superseding cause. Likewise if the intervening actor was merely inattentive, and did not become aware of the risk created by the antecedent actor until his own negligence made the accident inevitable, this was *not* "extraordinary," and therefore *not* a superseding cause. I think there are several problems with this analysis. First, however analytically pat it might sound when stated in the abstract, when applied to facts such as exist in the case at bar, the two rules produce different results, because *Kline* looks through the eyes of the intervening actor (when did he become aware of the existing risk?) and the Restatement rule looks through the eyes of the antecedent actor (should he have reasonably foreseen the intervenor's negligence?). Under Section 447, there are three distinct ways in which the liability of the antecedent actor continues, and one of them, § 447(a), is based *wholly on foreseeability,* regardless of whether the intervenor's negligence is "extraordinary" or not. Since, three years after *Whitner,* the Supreme Court in *Flickinger* expressly adopted Section 447 as the law of Pennsylvania, it is no longer necessary to try to harmonize Section 447 with prior Pennsylvania common law on superseding cause, as the *Whitner* court apparently felt compelled to do.

12. I note that in *Flickinger Estate, supra,* the Court explicitly rejected the "passive negligence" doctrine of *Cotter v. Bell,* 417 Pa. 560, 208 A.2d 216 (1965) and *Deluca v. Manchester Laundry and Dry Cleaning Co.,* 380 Pa. 484, 112 A.2d 372 (1955). *See also Clevenstein v. Rizzuto,* 439 Pa. 397, 403, 266 A.2d 623, 626 (1970) (questioning continued viability of applying the doctrine in pre-trial adjudications). The "passive negligence" doctrine held that as a matter of law, the active negligence of an intervening tortfeasor superseded the passive negligence of an antecedent tortfeasor. Again, under the "passive negligence" doctrine, we would be required to reverse (appellants have cited *Manchester Laundry* to us), but this rule of law was discarded in *Flickinger Estate.* While the passive negligence doctrine embodies a different principle of law than the *Kline* rule, still *Flickinger* indicates how the adoption of Section 447 has necessitated the abandonment of prior Pennsylvania common law on superseding cause.