## Komlo, Appellant, v. Balazick.

Argued April 9, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*R. W. Maxwell,* with him *Waychoff, Maxwell & Waychoff,* for appellant.

*W. C. Montgomery,* with him *Montgomery, Thompson & Baily,* for appellees.

OPINION BY ROSS, J., July 19, 1951:

This action of trespass was brought against Helen Balazick and the Fraternal Order of Eagles, Aerie No. 249, to recover for personal injuries alleged to have been the result of the negligence of the defendants. At the close of the evidence, the defendant Fraternal Order's point for binding instructions was affirmed. The case against the defendant Balazick was submitted to the jury which returned a verdict against her. From the sustaining of her motion for judgment n.o.v. plaintiff has taken the present appeal.

The jury verdict having been in his favor, we shall consider the evidence, as we must in such case, all facts and inferences reasonably deducible therefrom, in the light most favorable to the plaintiff. *Guca v. Pittsburgh Rys. Co.,* 367 Pa. 579, 80 A. 2d 779. So viewed, the pertinent facts are as follows:

At the time of the occurrence which gave rise to this action, the Fraternal Order of Eagles of Clarksville occupied as tenants part of a building owned by the defendant Balazick. The leased portion of the premises included the main dining room, kitchen, two rooms adjoining the kitchen and the cellar under the

kitchen. The landlord retained control over the remainder of the building, including that part of the basement not included in the lease. None of the ground surrounding the building was mentioned in the lease.

The premises are situated in Greene County near the Borough of Clarksville. Immediately west of the one side of the club building, and running parallel thereto in a northerly direction, is an old road, and some two hundred feet farther west and parallel to both building and road is the relocated highway. The only entrance to the Eagles' club room is located at the north end of the west face of the building. Leading to this entrance from the old road is a reddog pathway about 15 feet wide. There is a driveway extending from the old road to a basement door located at the south end of the west face of the building. The driveway slopes from street level at the old road to a depth of 6 or 8 feet below the surface of the ground at the point where it meets the door to the basement. At the time of the accident, a concrete retaining wall extended along the sides of this depressed driveway, rising above the surface of the ground "eighteen inches or two feet".

On May 18, 1947, at about 12:30 a.m., the plaintiff approached the club building from the south along the old road. He parked his car on the old road; the rear end of the car came to rest a short distance north of the driveway. Plaintiff got out of his car on the right-hand side and walked diagonally across the lot in a northerly direction to the entrance of the club, a distance of approximately 40 feet. The night was dark[1], it had rained earlier in the evening and there

---

[1] John Komlo (Cross examination): "Q. Was it so dark that night you couldn't see anything anywhere? A. I wouldn't say you couldn't see anything anywhere, you could see reflection where Clarksville was all lit up." When asked which of the men

were no lights about the building, but the plaintiff found his way to the entrance of the club without mishap.

The plaintiff was not a member of the Clarksville Aerie but was granted admission because he was a member of the Uniontown Aerie and as such was entitled to visit the aerie of Eagles anywhere in the United States. At the time of his arrival, several club members were playing cards in the club room. The players apparently resented his uninvited efforts to join the game and a "friendly argument" ensued, after which the plaintiff left the club. A "minute or so" after leaving, the plaintiff returned to the entrance but his knock was not answered. About 20 minutes to a half hour after plaintiff had first left the club, he was heard "moaning and hallooing outside" and "very shortly" thereafter he was discovered lying injured in that corner of the driveway formed by its south wall and the west face of the building. Plaintiff's own version of what happened after he left the entrance of the club is to be found in his testimony on cross-examination: "I started walking towards my automobile, I never got there. . . . Q. You could see the automobile? A. No, sir, it was dark. Q. You couldn't see it? A. I was walking in the direction I thought my car was at and that's the last thing I know I stepped in that hole."

in the club was first to come to his aid after he fell, plaintiff answered, "I couldn't recall, it was dark, I don't know who was first, it seemed to me like two or three of them were there at one time."

The witness Bennett, one of the men who discovered plaintiff after his fall, when asked whether he could see plaintiff when he first looked into the driveway, testified "No, sir, there was no lights"; and further, "Q. How did you see him? A. Someone had a flash light and we used a flash light and loaded him on the cot of the ambulance and took him to the Waynesburg Hospital."

There was testimony to the effect that several persons had fallen into the driveway before, that the officers of the Clarksville Aerie had called what they considered a dangerous situation to the attention of the defendant Balazick, that the lodge had offered to construct a guard rail on top of the driveway if the lessor would furnish the materials and that the offer was refused by the defendant, presumably because she denied the right of the lessee of the building to use any of the ground surrounding it.

Our decision hinges primarily on two issues: the negligence of the defendant and plaintiff's contributory negligence.

Laying aside for a moment the question of defendant's negligence, we deal first with the matter of plaintiff's contributory negligence, because it is well settled that if such contributory negligence existed as a matter of law, there can be no recovery of damages by plaintiff for his injuries, regardless of a showing of negligence on the part of defendant. The issue of whether or not plaintiff was contributorily negligent is predicated heavily on his familiarity with the premises. He testified that he had been a social guest at the lodge quarters "about three or four times" previous to the night in question, and that he had passed the property "hundreds of times". However, he attempted to qualify his knowledge of the condition of the premises, and in answer to the question, "And you were very familiar with them then?" testified, "Not with the condition on my left, no." Further: "Q. You were familiar with the property? A. With the road. Q. You saw it every time you pass there? A. I saw the road every time I pass there." If we are to infer from this testimony that plaintiff was *unfamiliar* with the premises, then he is in the position of one wandering around, in the dark, in unfamiliar territory, who takes

his chances of incurring injury from unforeseen dangers that might be lurking therein. The general rule that one who steps into darkened and unfamiliar space, and is injured, is guilty of contributory negligence (*Carns v. Noel,* 364 Pa. 77, 70 A. 2d 619; *Barth v. Klinck,* 360 Pa. 616, 62 A. 2d 841) is, therefore, applicable and compels judgment for defendant. In 163 A. L. R. 592 there appears a list of Pennsylvania cases supporting this principle. The record is devoid of evidence of any extenuating circumstances calling for plaintiff's presence at the spot where he fell, or that he was led into a false sense of security by any act of defendant.

If, on the other hand, we are to infer from his testimony that plaintiff was *familiar* with the property as a result of his previous visits there, then he is charged with knowledge of the existence of the depressed driveway and its approximate location. It is well settled in Pennsylvania that where a person chooses a place of danger in preference to one of comparative safety, and by reason of his position is injured, his own act in placing himself in such dangerous position amounts to an assumption of the risk and he cannot recover. *Hall v. Ziegler,* 361 Pa. 228, 64 A. 2d 767; *Earll v. Wichser,* 346 Pa. 357, 30 A. 2d 803. The record discloses that before he entered the building, plaintiff parked his car on the road parallel to the building, with the rear end of the car a short distance north of the driveway, making it unnecessary for him on his return to the car to pass the entrance to the driveway. Had he retraced the route he took on entering the building, on his return—an obviously safe route—the accident with its resultant injury would have been averted. His selection of a circuitous route and his rejection of the safe one provided for him, constitute an assumption of risk on his part. In either

view of the evidence, then—whether plaintiff was or was not familiar with the premises—his contributory negligence is so clearly revealed of record that it must be declared as a matter of law.

In this view, defendant's negligence need not be passed upon. *Armstrong v. Warner Bros. Theatres*, 161 Pa. Superior Ct. 385, 54 A. 2d 831. We shall, nevertheless, discuss it. Plaintiff was clearly a gratuitous licensee, as defined in section 331 of the *Restatement of Torts*: "a licensee whose presence upon the land is solely for the licensee's own purposes, in which the possessor has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general or local custom". A possessor of land is not an insurer of the safety of an invitee. His duty is merely to exercise reasonable care. *Sheridan v. Great A. & P. Tea Co.*, 353 Pa. 11, 44 A. 2d 280. Section 342, comment f, of the *Restatement of Torts* states in part: ". . . a possessor has no reason to expect the licensee's presence at any point other than that within which the licensee gives him the privilege to enter. He is, therefore, under no duty to warn licensees of conditions which exist outside the area covered by the license." We conclude from the record before us that plaintiff was without the orbit of duty owed to him by defendant when he wandered beyond his car, particularly in the absence of justification for his presence in that area.

Mr. Justice HORACE STERN, in *Potter Title & Trust Co. v. Young*, 367 Pa. 239, 80 A. 2d 76, discusses the duty of the possessor of land to a gratuitous licensee with great clarity and at some length. He divides negligence into two classes, active and passive, and distinguishes them as follows: "Generally speaking, the term 'passive negligence' denotes negligence which permits defects, obstacles or pitfalls to exist upon the

premises, in other words, negligence which causes dangers arising from the physical condition of the land itself. 'Active negligence', on the other hand, is negligence occurring in connection with activities conducted on the premises, as, for example, negligence in the operation of machinery or of moving vehicles whereby a person lawfully upon the premises is injured." He then cites cases illustrating the *non-liability* of the possessor of land toward licensees for *passive* negligence, and cases imposing *liability* for *active* negligence, and sets forth this rule: "The distinction that has thus been established, therefore, is that while the possessor of the premises is not generally liable to a gratuitous licensee, in the absence of wilful or wanton injury, for an accident due merely to existent conditions upon the premises, he *is* liable for injury occasioned by any affirmative or 'active' negligence on his part in connection with activities conducted on the premises." The case at bar falls squarely within the category of "passive" negligence. No wilful or wanton injury has been inflicted by the defendant, and the accident occurred as a result of plaintiff's coming in contact with a dangerous condition of the land. We find nothing in the facts of this case to render the rule of non-liability on the part of the possessor of land to a gratuitous licensee for passive negligence inapplicable.

Judgment affirmed.