The AMERICAN OIL COMPANY, Appellant,

v.

John H. HART et al., Appellees.

No. 21972.

United States Court of Appeals
Fifth Circuit.

Feb. 8, 1966.

Marion R. Shepard, Jacksonville, Fla., for appellant, Mathews, Osborne & Ehrlich, Jacksonville, Fla., of counsel.

Alfred C. Scott, Richard L. Randle, Edward H. Robinson, Robinson & Randle, Jacksonville, Fla., for appellee, John H. Hart.

Before JONES and BROWN, Circuit Judges, and BREWSTER, District Judge.

JOHN R. BROWN, Circuit Judge:

In this Florida diversity case, Amoco,[1] the unsuccessful Defendant, sued by the Employee of the Independent Contractor,[2] appeals from the injured Employee's judgment against it in the main case and the judgment in favor of the impleaded Independent Contractor on the contractual indemnity claim. Only the second deserves much treatment, although to illumine it we have to discuss the situation giving rise to the main case.

Amoco owned the service station and leased it in 1955 to Lessee,[3] but over the years all of the maintenance and upkeep of the premises (save for light-housekeeping type of activities in the Lessee's daily operations) had been done by Amoco at its expense and under its direction. Twenty-five years before it installed (or had installed) as a part of the station's permanent fixtures a vertical pipe which first bore a large sign, later a small cluster of spotlights. From external appearances, one visibly inspecting it could readily conclude that it was securely bolted to the concrete base by bolts which came up through the flange bell fitting at the base. Repeated painting only served to make it appear all the better. Actually, this was just a deceptive shell since the bell flange was not really bolted to the concrete, and the sole support of the pole was a short piece of vertical threaded pipe sunk in the concrete. From improper protection of the threads on installation, this fitting had become heavily corroded. Proof, if credited by the jury, showed that some years before, the deficiency in the construction of the pole had been called to the attention of responsible Amoco maintenance representatives who for budgetary reasons did nothing.

Amoco, on its own determination and without even so much as consulting the so-called Lessee, decided to mount on the pole a new type of curved, overhead fluorescent lighting fixture weighing some 80 pounds. Amoco, for its own account, on February 24, 1960, contracted with the Independent Contractor to do this work for the sum of $40.45 under a routine repair order form containing a contractual indemnity provision.[4]

About a week later (March 2, 1960) the work commenced. After a visible inspec-

1. The American Oil Company.

2. Dixie Carroll & Sons.

3. Stanley Peppera. Amoco has not appealed from the judgment entered in favor of the Lessee in Amoco's third party impleader.

4. "By acceptance of this work order, the contractor represents that he is an independent contractor * * *. The contractor agrees to indemnify and save harmless said American Oil Company from and against all liabilities for claims, judgments, losses, and all suits at law or in equity, costs and expenses, including reasonable attorney's fees, for injuries to and/or loss or damage to the property of any person or persons whomsoever, including both parties hereto and their employees, arising from or growing out

tion of the pole, the Employee, using the practice followed by maintenance painters over the years, undertook to reach the top by ascending a ladder resting against the pole. The rusty fitting gave way. The pole fell. The Employee crashed to the concrete apron receiving serious injuries.

■ By the use of interrogatories as a part of, and in conjunction with, a general charge, F.R.Civ.P. 49(a), a procedural device often having much appeal as the trial Court exercises its discretion in the choice of the manner of jury submission especially in complex areas of multiple claims-multiple parties, and the like,[5] we know precisely what the jury found. Without going into detail, it is sufficient to summarize that the jury found specifically that *vis-a-vis* the Lessee Amoco had undertaken to maintain, keep up, and repair the premises, and that while it did not know of the defect in the pipe structure, this deficiency was in existence at the time of the lease (1955), the time of the contract (February 24, 1960), and the time of the work, and in the exercise of ordinary care it should have known of it at these times. The Employee was also categorically exonerated from contributory negligence.

■ Based on these findings and the record, we are able to make precise legal conclusions. We reject Amoco's contention as to the main case that under

Florida law the proof was insufficient to sustain the verdict and judgment against it for the injured Employee. Under accepted Florida law, Amoco, responsible for its upkeep and maintenance and chargeable with knowledge of the long standing deficiency of this whole structure, could properly be held by the jury to have breached its duty to employees of an independent contractor. Hall v. Holland, Fla.1950, 47 So.2d 889, 891. And Hickory House, Inc. v. Brown, Fla.1955, 77 So.2d 249, so heavily stressed by Amoco, does not compel a different result.

Amoco's argument attacking the denial of the third-party impleader judgment against the independent contractor is a simple one. Standing squarely on Jacksonville Terminal Co. v. Railway Express Agency, Inc., 5 Cir., 1961, 296 F.2d 256, cert. denied, 1962, 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 18, and American Agricultural Chemical Co. v. Tampa Armature Works, Inc., 5 Cir., 1963, 315 F.2d 856, it insists that the words of the indemnity clause (see note 4, supra), being substantially identical, compel an identical result. And so it would, were contract construction simply a question of simple words.

■ But any such approach ignores the well accepted, but frequently ignored, principle that the words employed are read in the setting of the parties.[6] In

---

of, in whole or in part, and caused directly or indirectly by any operation incident to the performance of the work to be performed by this contractor on behalf of said American Oil Company under the terms of the order described herein."

5. See, e. g., Vandercook & Son, Inc. v. Thorpe, 5 Cir., 1965, 344 F.2d 930, 931 n. 2; E. L. Cheeney Co. v. Gates, 5 Cir., 1965, 346 F.2d 197, 200, 204–205, 205 n. 14; Page v. St. Louis Southwestern Ry. Co., 5 Cir., 1965, 349 F.2d 820, 824 n. 12; Nesmith v. Alford, 5 Cir., 1963, 318 F.2d 110, 125 n. 30, cert. denied, 1964, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420; Duke v. Sun Oil Co., 5 Cir., 1963, 320 F.2d 853, 865 n. 19, on petition for rehearing, 323 F.2d 518, 519; Tugwell v.

A. F. Klaveness & Co., 5 Cir., 1963, 320 F.2d 866, 868 n. 2 (extensive list of cases cited), cert. denied, 1964, 376 U.S. 951, 84 S.Ct. 967, 11 L.Ed.2d 970.

We have emphasized, of course, the discretionary nature of the trial Judge's choice. Clegg v. Hardware Mut. Cas. Co., 5 Cir., 1959, 264 F.2d 152, 156.

6. See, e. g., Fidelity-Phenix Fire Ins. Co. v. Farm Air Service, Inc., 5 Cir., 1958, 255 F.2d 658 at 660; Indemnity Ins. Co. of North America v. Du Pont Air Interests, 5 Cir., 1961, 292 F.2d 569; United States Industries, Inc. v. Camco, Inc., 5 Cir., 1960, 277 F.2d 292, 295–296, note 14; Travelers Indemnity Co. v. Holman, 5 Cir., 1964, 330 F.2d 142, 149; Texas Eastern Transmission Corp. v. FPC, 5

this light it is simply inconceivable that it was within the contemplation of these parties that although wholly innocent of any negligent conduct in the use of Amoco's premises, the Independent Contractor for the slight sum of $40 agreed to take on itself—and conversely spare Amoco of any pecuniary burden—the legal consequences arising from Amoco's negligence in furnishing an unsafe place to work by reason of the known (actual or constructive), long standing, then-existing deficiencies [7] in the very structure involved in the work to be performed by the contractor's employees. Florida has but recently reiterated its adherence to the usual rule that the indemnitor's purpose to indemnify against the indemnitee's negligence must be clearly revealed.

"It is the general principle of law that contracts of indemnification which attempt to relieve a party of its own negligency are not looked upon with favor. See: Altemus v. Pennsylvania Railroad Company, [D.C.] Del. 1962, 210 F.Supp. 834; City of Oakland v. Oakland Unified School District, 1956, 141 Cal.App.2d 733, 297 P.2d 752. In order for such a contract to be so construed, it must be clear and unequivocal. See: Jackson v. Florida Weathermakers, Fla.1951, 55 So.2d 575; Kay v. Pennsylvania R. Co., 156 Ohio St. 503, 103 N.E.2d 751; 27 Am.Jur., Indemnity, § 15; cases collected in Division IV, Subdivision B, of the annotation beginning at page 8 of 175 A.L.R."

Cir., 1962, 306 F.2d 345, 347, cert. denied Manufacturers Light & Heat Co. v. Texas Eastern Transmission Corp., 1963, 375 U.S. 941, 84 S.Ct. 347, 11 L.Ed. 2d 273; Rea Construction Co. v. B. B. McCormick & Sons, Inc., 5 Cir., 1958, 255 F.2d 257, 260–261; American Agricultural Chemical Co. v. Tampa Armature Works, Inc., 5 Cir., 1963, 315 F.2d 856, 861 n. 4 (concurring opinion); United States v. Croft-Mullins Electric Co., 5 Cir., 1964, 333 F.2d 772, 781 (concurring opinion),

Nat Harrison Associates, Inc. v. Florida Power & Light Co., 1964, Fla.Dist.Ct. App., 162 So.2d 298, 299.

On both scores the District Court was right.

Affirmed.

cert. denied, 1965, 379 U.S. 968, 85 S.Ct. 664, 13 L.Ed.2d 561.

7. The jury's answers to special interrogatories revealed that the defective condition was in existence on February 24, 1960, when the contract for repair was made, and even as early as November 1955, when the Lessee signed the lease. The jury further found that at both times Amoco should have known of the unsafe condition.