Christine Ehehalt et al. *v.* Nyari O'Dette, Inc. Commonwealth of Pennsylvania, Department of Environmental Resources, Bureau of State Parks, Appellant.

Argued April 2, 1984, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and COLINS, sitting as a panel of three.

*Diane S. Hudachek,* Deputy Attorney General, with her, *LeRoy S. Zimmerman,* Attorney General, for appellant.

*Stewart L. Cohen, Meltzer & Schiffrin,* for appellee, Christine Ehehalt, individually and as Executrix of the Estate of Caron N. Ehehalt, Deceased.

*James D. Hilly, LaBrum and Doak,* for appellee, Nyari O'Dette, Inc.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., September 7, 1984:

Department of Environmental Resources, Bureau of State Parks (Commonwealth) appeals a Bucks County Common Pleas Court order denying post-trial motions. We affirm.

In May, 1977, decedent Caron Ehehalt drove his automobile up a tow path[1] and over the edge of a Delaware Canal lock in Roosevelt State Park.[2] Ehehalt's wife filed wrongful death and survival act complaints[3] against the Commonwealth which owned the land at the scene of the incident and against Nyari O'Dette,

---

[1] Two large diamond-shaped "No Outlet" signs were posted on either side of the driveway leading north into the Commonwealth's park area from a restaurant parking lot, along with a small "No Motor Vehicles on Tow Path" sign.

[2] Roosevelt State Park is a state historical park owned, maintained and controlled by the Commonwealth Department of Environmental Resources, Bureau of State Parks.

[3] The cause of death was drowning.

Inc.,[4] the operator of the restaurant and parking lot where Ehehalt had been a patron prior to this happening.[5]

At trial, the jury allocated the negligence percentages as follows: 20% for O'Dette; 70% for the Commonwealth; and 10% for Ehehalt under the Pennsylvania Comparative Negligence Act, *as amended*, 42 Pa. C. S. §7102. It then assessed wrongful death damages at $550,000 and survival act damages act $500,000. The trial judge reduced the award to reflect Ehehalt's causal negligence and, after assessing delay damages pursuant to Pa. R.C.P. No. 238,[6] wrongful death act damages then totaled $614,532.41 and survival act damages totaled $558,677.18.[7] The Commonwealth filed post-trial motions (1) for judgment notwithstanding the verdict (judgment n.o.v.) in its favor and (2) to reduce the verdict to not exceed $250,000.

The Commonwealth contends first that the trial judge erred as a matter of law when he refused to direct a verdict, charge on, and/or grant the Common-

---

[4] The Commonwealth leased the restaurant parking lot to O'Dette, the restaurant owner.

[5] O'Dette settled with Ehehalt prior to trial and did not file post-trial motions.

[6] Rule 238 provides, in part:

(a) . . . [I]n an action seeking monetary relief for bodily injury, . . . the court . . . shall

(1) add to the amount of compensatory damages . . . , in the verdict of a jury, . . . damages for delay at ten (10) percent per annum, not compounded, which shall become part of the . . . verdict . . . ;

(2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the . . . verdict . . . .

[7] The delay damages were 10% per annum, not compounded, from October 16, 1979 to the verdict date, March 15, 1982.

wealth a judgment n.o.v. as directed by the provisions of the Recreational Use of Land and Water Act.[8] "The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." Section 1 of the Act, 68 P.S. §477-1. The trial court properly held that the Act should not be construed to grant immunity to government agencies which, of course, includes the Commonwealth. It adopted the rationale declared in *Hahn v. Commonwealth*, 18 Pa. D. & C. 3d 260 (1980), and *Watterson v. Commonwealth*, 18 Pa. D. & C. 3d 276 (1980), both of which held that the Commonwealth was not an "owner" for the purposes of the Act. While the Act is silent as to whether the term "owners" means private owners, it is clear that the Commonwealth was immune from liability under pre-*Mayle* case law.[9] The Commonwealth's parks and recreational facilities by definition are available for public use. Thus, it is clear that it need not be encouraged to make land available.[10] *See Borgen v. Fort*

[8] Act of February 2, 1966, P.L. (1965) 1860, *as amended*, 68 P.S. §§477-1—477-8.

[9] Ehehalt's accident occurred after the effective date of the Recreation Act and before the adoption of the Sovereign Immunity Act (Act 152), Section 5111 of the Judicial Code. *formerly* 42 Pa. C. S. §5111, repealed by Section 221(g) of the Act of October 5, 1980, P.L. 693. A similar provision is now found in Section 8528 of the Judicial Code, 42 Pa. C. S. §8528 (Act 142). *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), abolished sovereign immunity retroactivity. Therefore, *Mayle* applies and Act 152 (presently Act 142) does not apply retroactively. *See Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980).

[10] Also, Section 5 of the Act, 68 P.S. §477-5, makes provisions for land "leased to the state." If land owned by the Commonwealth was intended to be covered by the Act, there would have been no need to specifically mention lands leased by landowners to the Commonwealth.

*Pitt Museum Associates,* 83 Pa. Commonwealth Ct. 207, 477 A.2d 36 (1984).

The record adduced no evidence that Ehehalt entered the Roosevelt State Park premises for recreation.[11] The trial court reasonably concluded that Ehehalt, a patron of O'Dette's, being a stranger to the area, mistakenly entered the canal lock area. The danger of such a course was insufficiently posted to warn him that misdirection would lead to inevitable disaster.

The Commonwealth argues that judgment n.o.v. must be entered because of the indemnity clause[12] in the lease agreement between it and O'Dette or, in the alternative, that a new trial must be granted because the trial court failed to instruct the jury on the pertinence of the indemnity issue. We hold that the indemnity clause does not apply. "[T]he parties' intent to have their indemnity contract apply to a loss caused by the indemnitee's own negligence must be expressed in clear and unequivocal language." *Urban Redevelopment Authority v. Noralco Corp.,* 281 Pa. Superior Ct. 466, 474, 422 A.2d 563, 567 (1980). If the contractual language is not explicit on the liability for

---

[11] Section 2(3) of the Act, 68 P.S. §477-2(3) provides:

"Recreational purpose" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports and viewing or enjoying historical, archeological, scenic, or scientific sites.

[12] Paragraph 6 of the lease stated:

6. That it [the Restaurant] will at all times hereafter indemnity and save harmless the Commonwealth of Pennsylvania from and against any and all detriment, damages, loss, claims, suits, costs and expense work herein provided for which the Commonwealth may suffer, sustain or be subjected to directly or indirectly, by reason of the use and occupation of said premises by Lessee.

losses caused by the indemnitee's negligence, the Court will consider the surrounding circumstances and the parties' contractual intent. *Noralco Corp.*, 281 Pa. Superior Ct. at 474, 422 A.2d at 565. The loss did not result by virtue of the use and occupation of the O'Dette premises. It occurred in the park (the canal). It cannot be seriously contended that the terms of the agreement applied. Unlike the *Noralco* case, the indemnitor, O'Dette, did not have exclusive possession and control of the premises at the time of the accident. Our careful review of this record justifies the 70% negligence assessment against the Commonwealth because the Commonwealth failed to properly warn, maintain or supervise the park canal area.

The Commonwealth finally seeks to restrict the verdict to the $250,000 limitation imposed by Act 142 and to remove the delay damages awarded under the authority of Pa. R.C.P. No. 238. The Commonwealth argues that Act 142[13] should be applied retrospectively because the damage limitation in the Act is "procedural" and is not "substantive." We disagree. We disposed of these issues recently in *Commonwealth v. Twentier*, 76 Pa. Commonwealth Ct. 537, 464 A.2d 642 (1983), *appeal denied*, No. 250 W.D. Allocatur Docket 1983 (April 30, 1984). In *Twentier*, we held that causes of actions arising prior to the effective date of Act 152 (presently Act 142) are not subject to the $250,000 damage limitation provision. We held also that the assessment of delay damages against the Commonwealth pursuant to Pa. R.C.P. No. 238 is constitutional.

---

[13] Act 142, 42 Pa. C.S.A. §8528(b) provides:

Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of any plaintiff or $1,000,000 in the aggregate.

The Bucks County Common Pleas Court properly denied the Commonwealth's post-trial motions.[14]
Affirmed.

ORDER

The order of the Bucks County Common Pleas Court dated April 14, 1983 at No. 78-2361, is affirmed.

---

[14] The Commonwealth also filed post-trial motions (1) for new trial based upon evidentiary rulings, certain jury instructions and admission of expert testimony and (2) for remitter of damages by reason of the alleged excessive verdict. We hold that the trial court properly disposed of these matters.