792 F.2d 1310
 20 Fed. R. Evid. Serv. 1306
 Donald Joe NOWELL, II By and Through his Mother and Next
Friend, Pamela Mae NOWELL; Pamela Mae Nowell, and the
Estate of Donald Joe Nowell, By and Through Pamela Mae
Nowell, Administratrix, Plaintiffs-Appellees,
v.
UNIVERSAL ELECTRIC COMPANY, Defendant-Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Intervenor-Appellee.
 No. 85-4128.
 United States Court of Appeals,
Fifth Circuit.
 June 25, 1986.
 
 1
 Thomas A. Bell, Robert S. Addison, Daniel, Coker, Horton & Bell, Jackson, Miss., for defendant-appellant.
 
 
 2
 Francis H. Hare, Jr., Hare, Wynn, Newell & Newton, Alva C. Caine, Birmingham, Ala., Edward A. Williamson, Philadelphia, Miss., for plaintiffs-appellees.
 
 
 3
 Glenn F. Beckham, James E. Upshaw, Greenwood, Miss., for intervenor-appellee.
 
 
 4
 Appeal from the United States District Court for the Southern District of Mississippi.
 
 
 5
 Before JOLLY, HILL, Circuit Judges, and HUNTER,* District Judge.
 
 EDWIN F. HUNTER, Jr., District Judge:
 
 6
 Defendant, Universal, appeals from a judgment for plaintiff-appellee entered after a jury returned a general verdict in her favor following an extended trial. Although we have concluded that Universal was not entitled to have the case taken from the jury, we conclude that the trial court's conflicting jury instructions constitute grounds for a new trial. We therefore Reverse and Remand.
 
 BACKGROUND
 
 7
 This diversity suit, controlled by Mississippi substantive law, concerns a suit in which Donald Joe Nowell, the plaintiff's decedent, was seriously injured and subsequently died. The injury and death were caused by the explosion of a fifty-five gallon drum he was attempting to modify with an acetylene torch. Nowell worked for Wendell Edwards, owner of Edwards Tractor Company, as a mechanic and welder. Edwards occasionally supplied customers with insecticide spray rigs made from emptied drums.
 
 
 8
 Universal makes small electric motors. All four of its plants regularly purchased 55 gallon drums of Isonel 472, a varnish-like substance which they used to coat or insulate the wires in the manufacturing process. The original supplier of these drums did not require them to be returned. It was necessary for Universal to dispose of empty drums. The day before the accident, Donald Joe asked Edwards to get him some drums to modify into a spray rig for a tractor. Edwards called Harry Reynolds, an employee of Universal and made arrangements for the purchase of three empty drums ($1.50 each). Edwards picked up the drums, loaded them on a truck, and brought them back to his shop. Universal contends that the injury occurred one day later. This is disputed. Universal's receipt to Edwards established that he picked up the drums on April 29, 1981, and the hospital records reveal that Donald Joe was admitted at 10:40 on the morning of April 29, 1981. Several days after the explosion, Edwards disposed of the drum by placing it in a disposal location where it was apparently gathered in by garbage collection. In consequence, it was not available for inspection by either side after the suit was filed. Both Edwards and Mrs. Nowell viewed it on several occasions immediately following the accident. There is evidence in the record that there were other drums in the yards (purchased from others than Universal) that Donald Joe could have been working on at the time of the explosion.
 
 
 9
 Plaintiffs filed a wrongful death action against Universal, claiming that Universal was liable for negligence in failing to exercise reasonable care regarding the dangerous condition of the drum including a failure to warn and failure to eliminate the unreasonable risk of harm posed by the used drums. The jury returned a general verdict in the amount of $1,000,000. The trial court entered judgment after denying appellant's post trial motions.
 
 JUDGMENT NOTWITHSTANDING THE VERDICT
 
 10
 Universal insists that the district court erred in denying its motion for judgment n.o.v. In reviewing a denial of judgment n.o.v., we must look at all the evidence in the light and with all reasonable inferences most favorable to the party opposing the motion. Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir.1969) (en banc).
 
 
 11
 [I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied.... [I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.
 
 
 12
 Because only a general verdict was returned, our review of the judgment is hampered. In this posture it is impossible to tell which of three theories of liability was adopted by the jury.[1] Plaintiffs argue that it would be inappropriate to enter a verdict for the defendant in consequence of a challenge of error affecting only the duty to warn issue. We do not agree. A general verdict is acceptable in a case alleging multiple theories of liability, only if each of the several theories is sustained by the evidence and legally sound. Smith v. Southern Airways, Inc., 556 F.2d 1347 (5th Cir.1977), Jones v. Miles, 656 F.2d 103, 106 (5th Cir.1981).
 
 
 13
 Defendant is not correct in his repeated assertions that the "case went to the jury on one theory--negligent failure to warn." Nevertheless, this court would be compelled to vacate the judgment, set aside the general verdict, and grant judgment n.o.v. if defendant is correct in its contention that Universal owed no duty to warn either for the reason that Donald Joe or his employer, Edwards, knew of the danger presented by the drum.
 
 
 14
 Following the Boeing mandate, it is clear that the district court was eminently correct in denying the motion for judgment n.o.v. Whether or not Donald Joe or Edwards had knowledge of the specific hazard and of the particular safeguards which were necessary to avoid the specific risk was a question of fact properly submitted to and resolved by the jury verdict. There is no evidence that Donald Joe had ever encountered or had any knowledge of the specific risk associated with the subject drum, viz. an empty drum that had contained Isonel 472 or any similar varnish type substance. In point of actual fact, what Donald Joe knew was wrong. Edwards was not a trained technician or otherwise possessed of specialized expertise. Basically, he owned a business with one full time and one part time employee that sold new and used tractors and did repair work. He rarely had occasion to need and use empty drums. We conclude and reiterate that the trial judge rightly denied defendant's motion for a directed verdict and let the issue go to the jury. It follows that the denial of a motion for a judgment n.o.v. was proper. With respect to the judge's denial of a motion for a new trial pegged on the insufficiency of the evidence, we are bound by an "abuse of discretion" standard. In light of the evidence outlined above, we find no such abuse here.
 
 NEW TRIAL
 
 15
 Universal argues that if this court finds (as it has) that substantial evidence supported the jury's verdict, it is entitled to a new trial on the grounds that the district court erred in certain of its charges and evidentiary rulings.
 
 
 16
 Challenging specific evidentiary rulings, Universal contends that the trial court erred by admitting into evidence the Ashland Safety Data Sheet and the deposition of the Ashland chemist. This contention presupposes that recommendations concerning proper precautions for handling empty drums of xylene, a component of Isonel 472, have no relevant bearing on the safeguards for disposing of an empty drum of Isonel. This supposition is incorrect. The data sheet and the deposition of the chemist were admissible as evidence of the known and foreseeable hazards posed by the drum that exploded. Dr. Ball's testimony to which the defendant also objected addressed recognized safety procedures to be utilized in disposing of empty Isonel 472 or xylene drums and was most relevant.
 
 REMARRIAGE
 
 17
 Plaintiffs filed a motion in limine to exclude any evidence regarding Pamela Mae Nowell Manning's remarriage. Universal responded arguing the motion should be denied due to Campbell v. Schmidt, 195 So.2d 87 (Miss.1967). In Campbell, a wrongful death case, the Supreme Court of Mississippi noted:
 
 
 18
 [T]estimony showing any change in the conditions on which the suit is based is competent as against the rights of the person or persons affected; therefore, we hold that testimony may be introduced to show the remarriage of the widow, after the death of the husband, for which the suit is brought. Berner v. British Commonwealth Pac. Airlines, 230 F.Supp. 240 (S.D.N.Y.1964); Rogow v. United States, 173 F.Supp. 547 (S.D.N.Y.1959); Jensen v. Heritage Mut. Ins. Co., 23 Wis.2d 344, 127 N.W.2d 228 (1964).
 
 
 19
 195 So.2d at 90.
 
 
 20
 The district judge denied the motion subject to certain reservations, stating:
 
 
 21
 The evidence of remarriage will be admissible only on the question regarding the damages recoverable for the loss of contribution to the support of Pamela Nowell and the loss of sex, companionship, services and society for her. The jury will be instructed properly on this issue at the conclusion of the case.
 
 
 22
 Now, the evidence is not admissible on the matter of the financial needs of the plaintiff or her son.
 
 
 23
 We now cite pertinent inquiry and response as to the remarriage:
 
 CROSS EXAMINATION
 BY MR. BELL:
 
 24
 Q May it please the Court. Mrs. Manning, you have testified that you have remarried since the tragic death of Donald Joe Nowell?
 
 
 25
 A Yes, sir.
 
 
 26
 Q What is your present husband's name?
 
 
 27
 A Wendell Manning.
 
 
 28
 Q And where do you and he live now?
 
 
 29
 A We live in Winston County in the Mars Hill Community. It's about fifteen miles out of Philadelphia, towards Kosciusko off of Highway 19.
 
 
 30
 Q You do live with Mr. Manning now?
 
 
 31
 A Yes, sir.
 
 
 32
 Q And your son lives with you and he?
 
 
 33
 A Yes, sir.
 
 
 34
 Q What business is he in?
 
 
 35
 A He is self-employed. He has a sawmill in partnership with another man.
 
 
 36
 Q And lives in Winston County?
 
 
 37
 A Yes, sir.
 
 
 38
 Q Is he making a good husband?
 
 
 39
 A He's a good man, yes, sir.
 
 
 40
 Q And is he making a good father for your son?
 
 
 41
 A Yes, sir.Q Is he also providing for you and taking care of you?
 
 BY MR. WILLIAMSON:
 
 42
 I object to that. I think it's immaterial what he's earning or not earning.
 
 BY THE COURT:
 
 43
 I'll overrule the objection as to whether or not he is providing for them.
 
 
 44
 In its charge to the jury--the court stated:
 
 
 45
 "You may consider in assessing damage sustained by Pamela Mae Nowell, if any, the fact of remarriage as going to any damages which she might otherwise be entitled to recover."
 
 
 46
 This charge correctly stated the law of Mississippi as enunciated by its Supreme Court in Campbell, and we find no error in this particular.
 
 THE IDENTITY OF THE BARREL
 
 47
 On the same day that Donald Joe was injured, his wife visited him at the hospital. Over Universal's objection, the trial court admitted the following testimony by Mrs. Manning as to a hearsay statement by Donald Joe made during that visit concerning the identity of the drum that exploded:
 
 
 48
 Q (BY MR. WILLIAMSON) Would you describe where, the conditions of it, his condition, your observation of him and what, if anything, was said in regard to the barrels?
 
 
 49
 A ... I asked him what happened. And he said that he--that Wendell had called and got the barrels and Wendell had brought them to the shop and he brought the barrels in and he asked Wendell, he said, "Are these barrels clean?" And he said yes. And he said, "Are you sure?" And he said yes ...
 
 
 50
 And I said, "Well, Donald, where did they come from?" And he said, "From Universal Electric."
 
 
 51
 Universal insists that Pamela Nowell's testimony was not admissible under Rule 803(24), that its admission was highly prejudicial, and that a new trial is warranted. Plaintiff asserts that the statement was clearly admissible under Fed.R.Evid. 803(24). This is the residual or catch-all exception to the hearsay rule[2] and reads:
 
 
 52
 (24) Other exceptions
 
 
 53
 A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.
 
 
 54
 Congress believed that the residual exception was necessary to avoid the distortion of the specific exceptions beyond the reasonable circumstances they were intended to include. This exception was designed to protect the integrity of the specifically enumerated exceptions by providing the courts with the flexibility necessary to address unanticipated situations and to facilitate the basic purpose of the Rules: ascertainment of the truth and fair adjudication of controversies. Sen. Comm. on the Judiciary, S.Rep. No. 1277, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S. Code Cong. & Ad. News 7051, 7065-66; 11 J. Moore Moore's Federal Practice, Sec. 803(24) (2d ed.1982). We recognize that the residual exception must be used sparingly. United States v. Thevis, 665 F.2d 616 (5th Cir.1982). We also recognize that a district court has considerable discretion in applying the residual exception which a court of appeals will not disturb absent a definite and firm conviction that the court made a clear error of judgment in weighing the relevant factors. Page v. Barko Hydraulics, 673 F.2d 134, 140 (5th Cir.1982). But we know, too, that both the wording of the Rule and the legislative history indicate that Congress intended evidence to be admitted under Rule 803(24) only if the reliability of the evidence equals or exceeds that of the other exceptions to the hearsay rule.
 
 
 55
 There is no doubt the statement was tendered and admitted as evidence of a material fact--the identity of the barrel. This leaves the troubling question: Did Donald's statement and Pamela's repetition of that statement have such equivalent circumstantial guarantees of trustworthiness to make it admissible despite its double hearsay character?[3] Then, too, was the statement more probative on the point for which it was offered than other evidence that plaintiffs did or could procure?
 
 
 56
 We encountered a very similar problem in Page v. Barko Hydraulics, 673 F.2d 134 (5th Cir.1982). Judge Clark speaking for the panel made this observation:
 
 
 57
 "In our opinion it would have been a more precise application of Rule 803(24), and would have best served the interests of justice, Rule 803(24)(C), to exclude the offered statement. However, our standard of review requires more than a judgment that we would have ruled differently and so we decline to hold that the statement's admission was reversible error."
 
 
 58
 Nevertheless, the Court was careful to note:
 
 
 59
 "Because these evidentiary issues will probably recur on retrial, though not in precisely the same context, we emphasize that our rulings today are not precedent for that time. The district court will be free to reconsider these issues anew."
 
 
 60
 Id., at 140, 141.
 
 
 61
 The determination of whether a statement is admissible under the residual or catch-all exception to the hearsay rule is one which we recognize is not an easy determination to make. There are no crisp answers. We utilize the Page precedent. We may have ruled differently as to the admissibility of Pamela's statement but decline to hold that its admission constituted reversible error. It goes almost without saying that this evidentiary problem will probably recur on retrial. The District Court is free to reconsider anew and articulate its reasons.
 
 JURY INSTRUCTIONS
 
 62
 Instruction P-8-C was included in the judge's instructions. It peremptorily sets forth three possible theories pursuant to which Universal might be negligent.[4] The court then added this language:
 
 
 63
 "and if you further find from a preponderance of the credible evidence that Donald Joe Nowell was injured as a proximate result or contributing result of said negligence on April 29, 1981 and subsequently died as a result of said injuries on August 28, 1981, it is your sworn duty to return a verdict for plaintiffs in the amount adequate to compensate the plaintiffs for all damages sustained." (emphasis added)
 
 
 64
 A few pages further on, the record reveals a correct statement of the law:
 
 
 65
 Even though you believe that the defendant, Universal Electric Company, breached a duty to Donald Joe Nowell which proximately caused or proximately contributed to causing the accident complained of, nevertheless, if you further find by a preponderance of the credible evidence in this case that the action of Donald Joe Nowell constituted negligence which proximately caused or proximately contributed to causing said accident, then it is your sworn duty to diminish the amount of damages awarded to the plaintiffs in proportion to the extent to which Donald Joe Nowell's negligence contributed to the accident.
 
 
 66
 Here, we truly have the inscrutable mystery of a general verdict and the impenetrable uncertainty. The jury was specifically instructed that if Donald Joe was injured as a contributing result of defendant's negligence--that it was their sworn duty to return a verdict to compensate plaintiffs for all damages sustained. The jury was later instructed as to the effect of dual negligence. The instructions state diametrically opposite propositions of law. It is impossible to tell which theory of damages was adopted by the jury. Had a special interrogatory on contributory negligence been submitted, the error in the charge might have been localized permitting the verdict to stand.
 
 
 67
 Defendant pursuant to the Rule 51 contemporaneous objection requirement did note his objection to the P-8-C charge, but the objection was based on the assertion that "it did not correctly state the law that would be applicable in this case." The objection was not precisely to that portion of P-8-C that was clearly erroneous to the effect that if Universal's negligence was a proximate contributing result of said negligence that the award should be for all damage sustained. Failure to particularize the objection precludes review by this court unless the error is so fundamental as to result in a miscarriage of justice. Farrar v. Cain, 756 F.2d 1148, 1150 (5th Cir.1985).
 
 
 68
 No one can question that even where there has been a failure to specify an objection to a jury instruction, an appellate court may reverse for plain error. This court has often found and based its decisions on plain error. Rodrigue v. Dixilyn Corp., 620 F.2d 537, 540 (5th Cir.1980); Jamison Co., Inc. v. Westvaco Corp., 526 F.2d 922 (5th Cir.1976); Industrial Development Board of Town of Section, Ala. v. Fuqua Industries, Inc., 523 F.2d 1226 (5th Cir.1975); Sheppard Federal Credit Union v. Palmer, 408 F.2d 1369 (5th Cir.1969); Chagas v. Berry, 369 F.2d 637 (5th Cir.1966), cert. denied, 389 U.S. 872, 88 S.Ct. 161, 19 L.Ed.2d 154 (1967); Mondshine v. Short, 196 F.2d 606 (5th Cir.1952); Dowell, Inc. v. Jowers, 166 F.2d 214 (5th Cir.1948); see generally, 9 C. Wright and A. Miller, Federal Practice & Procedure Sec. 2558, p. 672 (1971).
 
 
 69
 When reviewing the district court's charge, we are bound to consider the instructions as a whole, the evidence presented, and the arguments of counsel to determine whether the error is so fundamental as to result in a miscarriage of justice. The difficulty created by inconsistent or contradictory instructions on a material point is, first, that it is impossible for the jury to know which is to be their guide, and second, it is impossible after the verdict to ascertain which instruction the jury followed. The jury requested a copy of the instructions. The judge, utilizing his discretion, declined the request. Which instruction did the jury follow? Did they find defendant's negligence was a contributing cause of the accident and award plaintiff all damages? Did they find damages of 3 million and reduce it to one million on the basis of contributory negligence? The conflict we perceive is not one of semantics or linguistic preferences but is one which cuts to the heart of the issues of comparative and contributory negligence and the effect of each. The effect of a conflicting instruction is to nullify a correct one. During the closing arguments of counsel, the issue of the effect of joint negligence and comparative proportionate reduction was not mentioned by either party although the record is replete with evidence to sustain both.
 
 
 70
 The trial court permitted Pamela to be questioned as follows:
 
 
 71
 Q. (BY MR. WILLIAMSON) Would you describe where, the conditions of it, his condition, your observation of him and what, if anything, was said in regard to the barrels?
 
 
 72
 A. ... I asked him what happened. And he said that he--that Wendell had called and got the barrels and Wendell had brought them to the shop and he brought the barrels in and asked Wendell, he said, "Are these barrels clean?" And he said yes. And he said, "Are you sure?" And he said yes. And he said he laid the drum down and lit his torch and he was sitting astraddle of it and he lit his torch, and he said he had the torch up and he was fixing to go into the barrel and something just told him, said, "You need to check those barrels again." And so he laid his--or he proceeded to lay the torch down and he said before he knew what happened that the drum had exploded....
 
 
 73
 When questioned during cross-examination, Mrs. Manning testified as follows:
 
 
 74
 Q. (BY MR. BELL) Wasn't the statement you made to us then to the effect that Donald Joe said that he was not going to trust Wendell again?
 
 
 75
 A. Oh, no, sir, he didn't say he wasn't going to trust Wendell again. He said that he wasn't going to cut on a barrel again without making sure himself, he wasn't going to ask anybody and depend on their opinion of it, he was going to make sure himself. He would never ask again, he would never depend on anybody else's giving him an answer of whether they were clean or not.
 
 
 76
 Q. So Donald Joe did know that the barrel is supposed to be clean before it is cut on, didn't he?
 
 
 77
 A. Yes, sir.
 
 
 78
 Special interrogatories under Fed.R.Civ.P. 49(a) are helpful to a jury because they reduce an otherwise complex trial to its simplest and most important issues. The genuine issues are distilled and an appellate court is often aided immeasureably when it is called on to review the case. In short, special interrogatories make both a jury and a reviewing court so much the wiser and so much less confused. See Ware v. Reed, 709 F.2d 345, 355 (5th Cir.1983). We encourage the district court to consider the use of special interrogatories with an appropriate general charge in submitting this case to the jury on retrial.[5]
 
 
 79
 Here, we decline to perpetuate by reason of the Rule 51 contemporaneous objection requirement a possible miscarriage of justice resulting from two diametrically conflicting instructions. We invoke the plain error doctrine--vacate the judgment, set aside the general verdict, and remand for new trial consistent with this opinion.
 
 
 80
 REVERSED AND REMANDED.
 
 
 
 *
 District Judge of the Western District of Louisiana, sitting by designation
 
 
 [1]
 The use of a general verdict to probe disparate allegations of negligence and contributory negligence, if properly objected to, would in all likelihood meet with our decisive disapproval. We cannot fault the trial judge. No one objected to the form of submission nor requested special interrogatories directed to the separate issue
 
 
 [2]
 Fed.R.Evid. 803(24) applies whether or not the declarant is available to testify. Fed.R.Evid. 804(b)(5) is an identical rule covering situations where the declarant is unavailable to testify. The language and purpose of both rules is identical and discussion pertaining to one of them is equally applicable to the other. See J. Moore 11 Moore's Federal Practice Sec. 803(24) (2d ed. 1982)
 
 
 [3]
 In the present case, Donald Joe Nowell's statement is in response to a direct question from his wife. It is an opinion as to where he believed the drum came from. Nowell did not go to Universal Electric himself and purchase any drums. He had no first-hand knowledge that the drum came from Universal Electric, and did not indicate the basis of his belief concerning the identity of the barrel. If Nowell learned the origin of the drum from his employer, Wendell Edwards, then his statement is double-hearsay and consequently even less trustworthy
 
 
 [4]
 The Mississippi Supreme Court recently reversed a jury verdict in a medical malpractice suit, holding that a similar instruction did not properly submit the issues to the jury and was confusing to them. Trapp v. Cayson, 471 So.2d 375 (Miss.1985)
 
 
 [5]
 Petes v. Hayes, 664 F.2d 523, 525 n. 2 (5th Cir.1981)
 Special interrogatories are authorized by Fed.R.Civ.P. 49(a), which provides in pertinent part:
 Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue.
 "We have on many occasions requested, begged, pleaded with, urged, and ordained the district courts to employ this handy and workable device." See Petes v. Hayes, 664 F.2d 523, 525 n.2 (5th Cir.1981); See also Mixon v. Atlantic Coast Line R.R. Co., 370 F.2d 852 (5th Cir.1966); Weymouth v. Colorado Interstate Gas Co., 367 F.2d 84 (5th Cir.1966); American Oil Co. v. Hart, 356 F.2d 657 (5th Cir.1966); Travelers Ins. Co. v. Hart, 356 F.2d 657 (5th Cir.1966); Travelers Ins. Co. v. Hart, 356 F.2d 657 (5th Cir.1966); Travelers Ins. Co. v. Busy Electric Co., 294 F.2d 139 (5th Cir.1961). See also John R. Brown, Federal Special Verdicts: The Doubt Eliminator, 44 F.R.D. 338 (1967).